# W. B. Pratt v. The State.

### No. 4255. Decided March 18, 1908.

**1.—Murder—Evidence—Previous Difficulty—Animus.**

Where there are no eyewitnesses to the killing great latitude must be allowed the State in the introduction of testimony, to develop the relations existing between the parties; and upon trial for murder where the defendant relied upon threats and self-defense, the State had the right to inquire into a prior difficulty, which occurred between the parties a day or such matter before the homicide, to show the animus of the defendant, etc.

**2.—Same—Evidence—Defendant's Acts and Declarations.**

Where upon trial for murder, the declarations and statements of defendant introduced in evidence by the State went to the extent only that he had shot deceased, it was error to exclude the conversation between defendant and others made shortly after his first statement that he had killed deceased and which conversation gave the explanation, reasons, grounds and circumstances of the killing, and its justification; and this although defendant under the statute had the right to become a witness in his own behalf. Following Green v. State, 17 Texas Crim. App., 395. Brooks, Judge, dissents.

**3.—Same—Evidence—Testimony on Former Trial—Death of Former Witness—Stenographic Report—Cross-Examination.**

Where upon trial for murder the State reproduced the testimony of a witness at a former trial, the witness having died since, in the form of a stenographic report of said witness' testimony, consisting of questions and answers given on examination in chief, cross-examination and re-examination, after having proved the correctness of said stenographic report. Held, that this testimony was admissible, and it would make no difference by whom or under whose direction or examination, whether by the State or defendant, the testimony was elicited, as long as such testimony itself was not subject to a fair and just objection, and this although the testimony had been given orally upon the former trial. The reproduction of testimony is not confined to that given in an examining trial, or by depositions. Following Cox v. State, 28 Texas Crim. App., 92. Davidson, Presiding Judge, dissents.

**4.—Same—Evidence—Undisclosed Motive of Deceased.**

Upon trial for murder it was error to admit testimony of the undisclosed motive of deceased in going to the place where the homicide occurred; it being in evidence that the deceased had threatened defendant the evening before the homicide that if defendant would come to said place (it being defendant's store) the next morning deceased would break defendant's neck with a club, and that when defendant did go there deceased approached him in an angry manner as if to carry out his threat. Following Adams v. State, 44 Texas Crim. Rep., 64; Johnson v. State, 22 Texas Crim. App., 206.

**5.—Same—Evidence—Reputation of Witnesses.**

Where upon trial for murder, a witness for the defendant was contradicted by two of the State's witnesses, and thereupon the defendant introduced witnesses by whom he proved the general good reputation for truth of his said witness, it was not competent for the State on cross-examination of defendant's said witnesses to show the good reputation for truth of the State's said two witnesses, by whom it had undertaken to contradict said defendant's witness. Following Jackson v. Martin, 41 S. W. Rep., 837.

**6.—Same—Charge of Court—Relative Strength of Parties.**

Upon trial for murder where the court instructed the jury upon the law of self-defense as applied to the facts, there was no error in refusing special charges on the comparative strength of the parties, which authorized the defend-

ant to assume that the deceased was so much stronger than he as to kill the latter without a weapon.

**7.—Same—Charge of Court—Confessions.**

Upon trial for murder, there was no error in instructing the jury that when the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admissions or confessions are to be taken together, and the State is bound by them unless they are shown to be untrue by the evidence; and that they are to be taken into consideration in connection with the other facts and circumstances of the case. Following Pharr v. State, 7 Texas Crim. App., 472; Combs v. State, 52 Texas Crim. Rep., 613.

**8.—Same—Argument of Counsel.**

See opinion suggesting the importance that counsel in all cases, should confine themselves to the record, in their argument to the jury.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of murder in the second degree; penalty five years imprisonment in the penitentiary.

The opinion states the case.

*Stillwell H. Russell, Newman, Phillips, Patterson & Sharp, L. L. Wood, Templeton, Crosby & Dinsmore,* for appellant.—On question of admitting testimony of the previous difficulty: Holley v. State, 39 Texas Crim. Rep., 301; 4 Elliot on evidence, section 3036. On question of defendant's declaration and explanation of conversation introduced by the State: Willson's Criminal Statutes, article 791, and cases cited in opinion. On question of proving general reputation of State's witnesses, cases cited in opinion. On question of defendant's special charge refused: Nalley v. State, 30 Texas Crim. App., 456. On question of argument of counsel: Smith v. State, 44 Texas Crim. Rep., 137; Thompson v. State, 33 Texas Crim. Rep., 472.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case. The former appeal is reported in 96 S. W. Rep., 8. On the last trial appellant was again convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years.

Appellant complains of the action of the court in overruling the motion for a new trial, because of the admission of the testimony of certain witnesses as to the particulars of the difficulty which occurred between the deceased and the defendant on Saturday evening prior to the homicide on the following Monday. The case is one of circumstantial evidence. In such case, and particularly where a defendant relies upon threats and self-defense, the State has, we think, the right to inquire into former difficulties, the surroundings and environments of the parties with a view of showing the animus of the accused, to ascertain their relations, and to throw light upon the question as to who

would probably be the aggressor in any difficulty between them. Where there are no eyewitnesses to the killing great latitude must be and is always allowed in the introduction of testimony, and the State should be permitted to explore every legitimate field of inquiry that might throw light on the matter and develop the relations existing between the parties. To adopt any other rule would tend to obscure the issue in such case, and frequently render it impossible to arrive at the truth, and thus prevent the punishment of the guilty. Nor is it believed that the adoption of such a rule could or would have the effect to unduly prejudice the rights of the defendant. The case cited by appellant to sustain the proposition herein insisted on, Holley v. State, 39 Texas Crim. Rep., 301 is not wholly in point. That case was reversed on the ground that the threat proven was too general, and there was nothing in the language that indicated that it was directed towards the defendant, and upon the failure of the court to permit Mrs. Holley to testify that the deceased frequently upbraided her, and expressed illwill and hatred towards defendant. There is, we think, nothing in the decision of that case which restricts the right of the State to prove facts showing malice and as illustrating the relation of the parties and their previous difficulties.

By the second assignment of error appellant complains that the court erred in not permitting him to prove by the witness, Luther Moore, what appellant said to him as to the facts of the killing of the deceased. This matter arose substantially in this way: On his direct examination, Luther Moore, introduced by the State, testified: "I heard the gun fire on Monday morning; I was on my gallery tying my shoes. I went up to the store with Will Pratt and met the defendant, who was going east, and he remarked to us, 'You will find Lide around there very damned dead; I shot him and I guess he is dead.'" Upon crossexamination the witness, among other things, testified, that when he met defendant he was going towards the store and the defendant was going east toward his son's house; that his son lived about 300 yards east of the store, and to go to Cooper one would have to go west from the store, and at the time defendant made the remark there that we would find Lide very damned dead around there, and that he had shot him, defendant was then riding, "and I don't remember whether he stopped or not; if he did he just stopped a minute, but he did not stop and stand and talk any length of time; he made the remark and went on; at that time defendant did not go into a detailed statement as to how the difficulty occurred, or make any explanation. In a few minutes he came on back by the store and said something to me about going to Cooper with him; that he wished somebody would go with him to Cooper and bring his mare back; he then went on in the direction of Cooper, and after he left for Cooper I started to go and overtook him in about two or three miles from defendant's home, and when I caught up with him and after I overtook him I heard him in a conversation with Oscar Anderson and Carter Anderson and myself, tell

about how the killing occurred. In this conversation he, in the presence of all of us, explained how the killing of Lide occurred." Appellant then asked the witness to tell the jury what appellant said in this conversation in explanation of said killing, and how·the same occurred. Counsel for the State objected to the inquiry, and the evidence sought to be elicited thereby on the ground that such statement and declarations were hearsay, immaterial and irrelevant, which objections were by the court sustained, and the proffered testimony excluded. The bill of exceptions evidences that, if permitted the witness would have testified, as follows: "Defendant, in said conversation had, in the presence of me and Oscar and Carter Anderson on the road to Cooper, stated that on Sunday evening prior to the killing on Monday morning at John Pratt's house, the deceased told him that he was coming over to the store the next morning, and take a stick or club and break his damned old neck; and that on Monday morning he (defendant), went over to the store to get some ice, and that he opened the door so as to let in light sufficient to see how to get the ice out of the icehouse, and that when he opened the door he saw the deceased, Lide, standing on John Pratt's north porch, facing the store, and that Lide immediately started towards him, and that when he saw him coming he went to the guncase and got his gun and set it down by the side of the door and looked and saw Lide was still coming; that he came right on in that direction and never stopped; and that when he got within about thirty yards of him, defendant asked him if he was coming for peace or for war, and he refused to make any reply to him; that the deceased was looking right in his face, but never said a word; that he then picked his gun up, and pointing it toward the deceased, called to him two or three times to halt and he refused to do so, but came right on, looking defendant right in the face; looking angry and came toward him like an old mad bull; that when he got within about twelve or fifteen feet of defendant, that he shot and killed him; that his gun was loaded with seven and one half chilled shot; that he hated it, and that he did it to save his own life; that Lide was a very dangerous man and if he had waited until he got in reach of him, owing to his (defendant's) physicial condition, that he would not have had any show in a contest with deceased." This testimony was admissible, and the court erred in excluding it. White's Annotated Code of Criminal Procedure, article 791, is as follows: "When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read all other letters on the same subject between the same parties may be given. And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence." This precise question was raised, discussed and settled in the case of Green v. State, 17 Texas Crim. App., 395. In that case, after quoting the above article, Judge Willson says: "This article expands the common-law rule with

reference to such evidence. At common law, when a confession or admission is introduced in evidence against a party, such party is entitled to prove the whole of what he said on the subject at the time of making such confession or admission. 1 Greenleaf Ev., sections 201–218; Wharton Criminal Ev., section 688. But the above quoted articles do not restrict the explanatory act, declaration, conversation or writing to the time when the act, declaration, conversation or writing sought to be explained occurred, but extends the rule so as to render such acts or statements admissible, if necessary to a full understanding of, or to explain the acts or statements introduced in evidence by the adverse party, although the same may have transpired at a different time, and at a time so remote even as to not be admissible as res gestæ." After referring to the case of Shrivers v. State, 7 Texas Crim. App., 450, which seemed to have ignored the provisions of the above quoted article, the opinion then proceeds: "But, in a case like this, where the statements offered are offered only in explanatibn of defendant's statements introduced in evidence against him by the State, we can find no warrant in the statutes for thus limiting their admissibility. We are of opinion that under this article the statement of the defendant, made before the inquest, if it be necessary to make his confession fully understood, or to explain the same, was admissible." This case has been frequently followed by this court, and the principle there stated is illustrated in the facts of many cases. See Harrison v. State, 20 Texas Crim. App., 387; Rainey v. State, 20 Texas Crim. App., 455; Caither v. State, 21 Texas Crim. App., 527, and Bonnard v. State, 25 Texas Crim. App., 173, in which the case of Green v. State, is, in express terms cited and approved. It has, however, been held that declarations and statements are not admissible in evidence to explain previous statements and declarations when such previous declarations and statements are full and complete, and there is nothing left in doubt concerning them. Craig v. State, 30 Texas Crim. App., 619.

The true criterion and test for determining the admissibility of such statements is: are they necessary to make any other act or declaration of a defendant, which has been proved by the prosecution fully understood, or do they explain same? Wood v. State, 28 Texas Crim. App., 61. We think this is the true criterion and the true test, and that measured by this test as applied to this case, the proposed testimony was admissible. The declarations and statements of appellant offered in evidence by the State went to the extent only that they would find Lide dead, and that he had shot him. In this testimony so introduced by the State there was an unequivocal admission that he had killed Lide, without explanation or undertaking to account for the circumstances under which the killing was done. In the conversation and statement sought to be proved, appellant undertook to give and did give the explanation, reasons, grounds and circumstances of the killing. This testimony was explanatory of the killing and contained appellant's justification for the homicide. It is, however, insisted with much force,

and not without some plausibility, that the Green case and others cited, arose and were decided before this statute was enacted permitting defendants to testify in their own behalf, and that the rule adopted in the above cases should not now be followed, for the reason that, as applied to the facts of this case, the defendant has had the benefit of the excluded testimony in that he became a witness in his own behalf, and on the trial testified to substantially the facts sought to be proved as hereinbefore set out. The fallacy of this position, however, consists, as we conceive, in this fact: The State had put in evidence the declaration of the appellant that he had killed the deceased. It stood before them, therefore, not only as an admission of the fact, but as a statement and admission of the killing without any justification or excuse claimed for having done so. Notwithstanding the appellant may months afterwards, on the trial, have undertaken and been permitted in his testimony to state the facts of the homicide, he would yet be denied the benefit of an explanation made about the same time which, in fairness, should be considered along with his admissions of the act of killing. We can well understand how, in the absence of such testimony giving the declarations and conversation explaining the killing on the same day of the other admissions, that that circumstance could be used against him before the jury with telling effect, and it could and doubtless would be claimed that his subsequent testimony, given months after, was so wholly inconsistent with the prior declarations, that in view of his interest in escaping punishment, might well be disbelieved by the jury, and attributed by them to the dictates of self-interest and possibly lead to the belief that such account was fictitious and manufactured for the occasion.

It is claimed again by counsel for appellant, that the court erred in permitting the State to reproduce the testimony of Munce Jester. This witness had testified on the former trial, and since said trial had died, and over the objection of defendant, the State was permitted, after having proven the correctness of same, to produce a stenographic report of his testimony given on an earlier trial. The general proposition herein involved has been ruled by this court adversely to the contention of appellant in the case of Hobbs v. State, decided at the present term, and the rule there announced is that where a witness had testified on a formal trial, and where the defendant had cross-examined such witness, or had the opportunity of cross-examination, and the witness had subsequently died or removed beyond the jurisdiction of the court, that his testimony might be reproduced after a proper predicate had been laid. However, counsel presents a view of this question which has not, we believe, heretofore arisen in this State, or, so far as we have been able to ascertain, elsewhere. In making proof of Jester's testimony on the former trial, it seems that State's counsel undertook, at least to the extent of the cross-examination and re-examination to introduce and did introduce both the questions propounded to and the answers given by this witness. Among other things, it was contended

by appellant that this should not have been permitted for the reason that, in respect to the cross-examination, his counsel would have had the right to waive the questions asked upon the former trial, and cannot now be forced over their objections to propound the same questions, or to draw out or introduce before the jury the same testimony offered upon a former trial, and that a great many of said questions could not be propounded by State's counsel under the rules of law, and that such testimony would be inadmissible upon the part of the State. It is the claim and contention of appellant, in substance, that to permit the introduction of the record of the cross-examination of the deceased witness by the State was in effect to permit the State to cross-examine its own witness. They argue, in this connection, that if the witness had been living, and the State had placed him on the witness stand, and asked him the questions found in the record on direct-examination, and the witness had given the exact answers found in the record, and the defendant had then declined to cross-examine him, that the State's counsel would not have had the right to propound to the witness the questions found in the record on cross-examination, and elicit the answers found therein. We have not found any authority discussing this question, but on reason the action of the court, it seems to us, was not subject to just criticism or complaint. The policy of the law in permitting the reproduction of the testimony of the witness who has died is somewhat founded on necessity. The rule takes no notice in reproducing such testimony whether, if material, it was introduced on direct examination or cross-examination, and we think that in this case, unless the testimony itself was subject to fair and just objection, it would and could make no difference by whom or under whose direction or examination the testimony was elicited. We can conceive easily of a case where portions of cross-examination ought not to be reproduced. If, for instance, the questions were such as to suggest matters improper to be inquired into, and all of a character and a nature likely to inflame the minds and passion of the jury, it ought not to be permitted, and as applied to the record in this case, we cannot see that the court was in error in permitting any portion of the testimony objected to. The rule that where a witness has once testified in a case, and the defendant has had the opportunity to cross-examine him, and such witness has died, that his testimony may be proven on a subsequent trial of the same case has been adopted, affirmed, and followed, among others, in the following cases: Sullivan v. State, 6 Texas Crim. App., 319; Black v. State, 1 Texas Crim App., 368; Johnson v. State, 1 Texas Crim App., 333; Cox v. State, 28 Texas Crim. App., 92; Potts v. State, 26 Texas Crim. App., 663; Avery v. State, 10 Texas Crim. App., 199; Bennett v. State, 32 Texas Crim. Rep., 216; Hamblin v. State, 34 Texas Crim. Rep., 368; Gee v. State, 31 Texas Crim. Rep., 71, and Gilbreath v. State, 26 Texas Crim. App., 315. Nor do we think it important that the testimony sought to be reproduced was given orally upon the former trial of the case, or that such reproduction of testimony should be con-

fined to testimony given in the examining trial, and by deposition, or that same was not reduced to writing as in cases in examining trials. In more than one case testimony given orally on the trial itself has been reproduced. The case of Cox v. State, 28 Texas Crim. App., 92 is directly in point.

Again, it is insisted by appellant that the court erred in admitting the testimony in respect to statements made by Mrs. Willie Pratt, the wife of John Pratt, as to the movements of the deceased on the morning of the killing. The matter arose in this way: Mrs. Pratt has testified on examination by appellant, as follows: "I heard the gun fire that killed Mr. Lide. I was in my kitchen at the time preparing breakfast; just a short time before the gun fired I saw Mr. Lide at my kitchen door. He had nothing at the time; he had just brought a bucket of milk and set it in on the table, he then left and went out of my sight; Jim Medlin at that time had not got up, was asleep." Medlin, it should be observed, was a clerk in the store belonging to appellant. On cross-examination Mrs. Pratt was asked many questions as to the statements claimed to have been made by her to Taylor and Kesler, and in reply thereto on cross-examination testified that Lide (the deceased) did not on the morning of the killing at her house ask her where Jim Medlin was. That Lide did not say to her that morning that Jim Medlin has been up pretty early; that he (Lide) saw the store door open; that she did not so tell B. B. Taylor or Norman Kesler; that she did not state to B. B. Taylor at her house that day that Lide had asked these questions and that she did not tell Taylor and Kesler that Lide said that Medlin had got up early; that he saw the store door open. Taylor and Kesler were produced by the State in rebuttal, and in substance testified that they had talked with Mrs. Pratt, the wife of John Pratt, at her home on Monday morning after the killing, and that she stated in said conversation that Lide had gotten up that morning and built a fire, and went out to the lot, and came back and rebuilt a fire, and then woke her up, and she asked him where Jim was, and that Lide replied that he was over at the store; that he saw the door open, and that Lide went off, and about the time she got dressed she heard a gun fire. She also said in the same conversation that she never heard Mr. Lide say anything against the appellant in her life. This testimony of the witnesses Taylor and Kesler was objected to because it was hearsay, immaterial, irrelevant and prejudicial to the rights of the defendant, and because it was an effort on the part of the State to show the undisclosed motive of deceased in going to the scene of the killing, and that it was an effort to contradict Mrs. Willie Pratt upon a material matter. The contention stoutly made here is, that the object and effort of this testimony was that it tended to influence the jury to believe that the deceased saw the store door open and concluded that Jim Medlin (the clerk) was there, and that he went over to the store for an innocent purpose, not knowing or thinking that appellant was over there. An examination of the record discloses the fact that

this testimony was used in argument for this purpose. It should be remembered that appellant had testified that the deceased had said to him the evening before, that he was coming to the store the next morning and break his neck with a club. The contention is made that appellant had a right to believe that if he saw deceased coming, that his purpose in so doing was to do him violence, and that the effect of the admission of this testimony proved or that it tended to prove that in fact the deceased had gone to the store where Medlin was for an entirely innocent purpose, of which appellant was not aware, and that it was incompetent in this manner to prove such facts or such innocent purpose. The case of Adams v. State, 44 Texas Crim. Rep., 64, as well as Johnson v. State, 22 Texas Crim. App., 224, seem to sustain this contention. In the first-named case it is stated that the court erred in admitting the testimony of the witnesses Lindley, Vaighan and Richardson, the substance of which was, the deceased was enroute from Lindley's residence to visit his father some miles away at the time of the encounter; his father was in ill-health, and that deceased had no house of his own. These facts, however, seem to have been unknown to the defendant in that case. In passing on the admissibility of this testimony in the case of Adams v. State, the court say: "In Johnson's case, 22 Texas Crim. App., 206, it was said: 'It is a maxim of the law that a man is only bound so far as matters reasonably appear to him. He cannot be bound by motives locked up and hidden in the breast of others. Deceased's undisclosed and undiscovered motive in going to Caddo Mills was not a material issue, and could throw no light whatever upon the guilt or innocence of the defendant, whose motives alone were the important issues to be tried.'" Brumley v. State, 21 Texas Crim. App., 222; Ball v. State, 29 Texas Crim. App., 107; Fuller v. State, 30 Texas Crim. App., 559; Wooley v. State, 3 Texas Ct. Rep., 236; Wooley v. State, 64 S. W. Rep., 1054; and Adams v. State, 42 Texas Crim. Rep., 366; 64 S. W. Rep., 1055.

Again, appellant complains of the error of the court in admitting testimony of various witnesses as to the good reputation of Taylor and Kesler, both of whom had been introduced for the purpose of impeaching Mrs. Willie Pratt, and both of whom testified to contradictory statements made by her. The matter arose in this way: both of these witnesses, B. B. Taylor and Norman Kesler had testified to conversations with and statements by Mrs. Pratt in respect to matters occurring at the time of the killing in contradiction of her testimony given on the trial. With a view of supporting the testimony of Mrs. Pratt, counsel for appellant had placed on the witness stand White and other witnesses, all of whom testified to the general reputation of Mrs. Pratt for truth and veracity, and that it was good. The State's counsel on cross-examination of each of said witnesses proposed to prove, and was by the court permitted to prove on cross-examination that the general reputation of the witnesses Taylor and Kesler for truth and veracity was also good. This testimony was objected to because immaterial, irrele-

vant and prejudicial to the rights of defendant in the case, and because the defendant had not put in issue or offered any testimony impeaching the testimony of either of said witnesses, and because the witnesses Taylor and Kesler, had not testified to any facts in the case, and had been offered by the State for the sole purpose of contradicting Mrs. Pratt, and because the reputation of the witnesses Taylor and Kesler had not been attacked. We have not been cited to any authority on this question either by counsel for appellant or for the State. We are inclined to believe, however, that the testimony was not admissible. The ruling of the court in the case of Jackson v. Martin, 41 S. W. Rep., 837, by fair analogy, would seem to exclude such testimony.

Serious complaint is made, that the court erred in refusing to give special charges Nos. 1 and 3 requested by counsel for appellant. The requested charges were objectionable to some extent in that they were prefaced by appellant's theory of the case, and seemed to assume that defendant's fear arose from the belief on his part that by reason of the superior strength, power and youth of the deceased as compared with the feebleness and lack of strength on the part of Pratt; and, therefore, that the deceased could kill him without a weapon. We think it would have been wholly improper for the court to have given these requested charges. The court's general charge while not quite as full in some respects as could have been, seems, however, to be a fair and reasonable presentation of the law of the case as far as it went. We should not have felt compelled to reverse the case on account of the court's charge on this question, though we suggest, in view of another trial, the propriety of applying the principles announced in the court's charge to the defense raised in appellant's testimony.

Again, complaint is made that the court gave in his charge to the jury, the following: "You are further instructed that when the admissions or confessions of a party are introduced in evidence by the State, then the whole of the admissions or confessions are to be taken together, and the State is bound by them, unless they are shown to be untrue by the evidence; such admissions or confessions are to be taken into consideration by the jury as evidence in connection with the other facts and circumstances of the case." A charge almost identical with this was approved in the case of Pharr v. State, 7 Texas Crim. App., 472. The rule laid down in the Pharr case we have approved at the present term in the case of Combs v. State.

Serious complaint is made of the argument of counsel for the State in his closing address before the jury. We deem it unnecessary, in view of the fact that the case is to be reversed for other reasons, to discuss or consider this assignment further than to remark that the complaint is not wholly without merit, and to suggest to State's counsel the importance in all cases of staying in the record.

The only remaining assignment is that the verdict of the jury was unsupported by the evidence. In view of the fact that the case is to be tried again, we deem it unwise to discuss this assignment.

For the errors indicated, the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*

BROOKS, JUDGE, dissents, and believes the statements of defendant on the day of the homicide but subsequent to first statement of appellant, are self-serving and inadmissible. And concurs as to other questions decided.

DAVIDSON, PRESIDING JUDGE (partly dissenting).—I concur in the reversal of the judgment, and believe that the reproduction of the testimony of the alleged dead witness, Jester, was also reversible error. It will be noted that Jester had testified on a previous trial of this case before the jury. Subsequent to giving such evidence, and prior to the trial which resulted in this conviction, he had died, his testimony being reproduced by a witness who should have heard him testify on the former trial.

Article 24, of the Code of Criminal Procedure, thus reads: "Defendant shall be confronted by witnesses, except. 'The defendant upon a trial shall be confronted with the witnesses, except in certain cases provided for in this code, where depositions have been taken.'" The Constitution provides that the accused shall be confronted by the witnesses against him. This language of the Constitution omits any provision in regard to the reproduction of the testimony in favor of the accused. In Cline v. State, 36 Texas Crim. Rep., 320, a majority of the court held, that the word "trial" in the Constitution as well as in article 24, Code Criminal Procedure, supra, meant a trial which means by a jury. Nowhere in our Constitution or Code of Procedure has the State ever been authorized to reproduce the oral testimony of a witness testifying on any other former trial under any circumstances whatever. It is only where depositions have been taken that such authority by statute and the Legislature has gone far enough in this direction to constitute testimony taken in an examining trial depositions. Judge Henderson, who wrote a very able dissenting opinion in the Cline case, conceded this to be correct. So, so far as the Cline case is concerned, there was no difference between the members of the court, it being unanimous upon that question. In the case of Childers v. State, 30 Texas Crim. App., 160, the same proposition is announced. In that case the testimony sought to be reproduced had been delivered on a habeas corpus trial. The rule of evidence known to the common law, when not in derogation of our constitutional or statutory rules, will apply in this State, but the rules of evidence known to the common law in Texas means the rule known under the unwritten common law, not acts of Parliament. Depositions were unknown at common law and necessarily so. Depositions have not been known except under statutory law provided by some legislative body authorized to make such provisions. The common law as known in many of the States apply to and include the acts of Parliament; some

of them include the acts of Parliament as late as 1776. Of course, no one would contend that rule obtains in Texas, and if it does exist it is only by judicial construction or judicial legislation. Our Constitution and Legislature have made no such provision. Cox v. State, 28 Texas Crim. App., 92, is cited as being directly in point to sustain the ruling of the trial court in this case. It is true the court permitted the introduction of the testimony of the deceased witness, still article 24, Code Criminal Procedure, supra, was not even reviewed or suggested for revision in that case. Necessity is a rule that should not override both the Constitution and the acts of the Legislature. It has been said that necessity is the mother of invention; and the maternal productiveness has been carried to a remarkable extent with reference to this particular subject, and in every instance to the overturning of the Constitution and without even legislative authority. If article 24, Code Criminal Procedure, supra, means anything, it means what it says, and that is, that the defendant upon *trial* shall be *confronted with the witnesses except in certain cases provided for in this code, where depositions have been taken.* Certainly appellant was *on his trial* in this case, the appeal here demonstrating that fact. It will not be denied that depositions of the deceased witness were not taken. The bill of exceptions demonstrates the fact that it was the reproduction of oral testimony. There ought to be some limit of judicial legislation even where it is the outgrowth of the wonderful productiveness of the rule of necessity. The trouble here arises, as is generally the case, where the court breaks loose from its legitimate anchorage and enters the unknown seas of necessity in order to reach results; that is, the sea "necessity" is limitless, and having once entered it, there can be no rule, chart or compass, except as prescribed by the court. The Legislature in entering this limitless expanse prescribed a boundary, to wit: article 24, Code Criminal Procedure, supra, and those provisions from articles 774 to 814, Code Criminal Procedure. In every instance where they have touched the question by their authority, the boundary has been drawn at what that body termed "depositions." They have not undertaken to authorize the reproduction of oral testimony. So far as it has been called to the attention of the writer, article 24, Code Criminal Procedure, supra, has not been directly called to the attention of the court and construction placed upon it. There are cases in which the oral testimony of absent or dead witnesses has been reproduced, but so far as I am aware, as before stated, the courts have not had this matter called to their attention nor called upon to construe article 24, Code Criminal Procedure, supra, when compared with those acts of the Legislature authorizing the introduction of depositions, unless it be the Childers case and Cline case, supra. Said article 24, Code Criminal Procedure, is in direct harmony with the constitutional provisions, except with reference to the clause which authorizes the reproduction of evidence by depositions. So we may take it, so far as the legislative mind and intent is concerned, as conclusively settled that the reproduc-

tion of testimony in Texas of absent or dead witnesses cannot be had unless his testimony had been placed in the form of depositions. The rule that the oral testimony can be reproduced is purely judicial, and as Judge Winkler said, in the case of Sullivan v. State, 6 Texas Crim. App., 319, it arose out of "judicial necessity." And in Steagald v. State, 22 Texas Crim. App., 464, Judge White directly admitted that it was violative of the Constitution of Texas, but was necessary despite the Constitution. The only necessity the writer has been able to discover is that if such a rule was and is not adopted, some accused person might evade a conviction. This may be true as a fact, and it is equally true of almost any other known rule that applies to criminal trials. If it be possible that such a contingency could arise and the State could not obtain a jury for the trial of an accused person, then on a higher ground of necessity he must be tried before a court without a jury and his execution occur by mandate of the court in the absence of such jury trial. The right to be tried by a jury is no more imperative in the Constitution than is the confronting of the witness by the accused. The writer does not understand how a reasonable, fair or correct interpretation or construction of article 24, Code Criminal Procedure, supra, could mean other than that the party accused when placed upon his trial must be confronted by the witnesses against him. This harmonizes with the Constitution and clearly evidences the legislative intent, and it further expressly evidences the purpose of the legislative mind, which was to require the confronting of the accused by the witness against him in evry case except where depositions have been taken. So by the rule adopted by the court we have a Constitution and the legislative act both overthrown by a rule of "judicial necessity." The courts have been forced to resort to many contradictory reasons or even excuses why this plain provision of the Constitution should be set aside and disregarded. The first case occurring in Texas is recorded in 35 Texas, 587, Greenwood v. State. In that case the then Supreme Court gave as a reason for ignoring the constitutional provision, that it was necessary to so construe it that the defendant might have the excuse or be permitted to reproduce testimony in his favor. The writer would venture the assertion that no court in this day would stand for a moment upon such reason as that decided in the Greenwood case; in fact, so far as the writer understands, this was the first ground upon which it was placed in Texas, and until the Greenwood case was written, the question never arose so far as I am informed. It had not until then occurred that such rule could obtain. Texas had been in existence since 1836, either as an independent Republic or as a State in the Federal Union. The Greenwood case arose subsequent to 1866. In the Childers case, supra, the court held that the evidence taken on a habeas corpus trial could not be reproduced upon a final trial of the same party. The Constitution and the statutes with reference to the reproduction of testimony through means of depositions was there discussed, and I am firmly of the opinion that the reasoning in that case will not be successfully met,

except by branching out wider and broader in the dangerous field of judicial necessity, and it will be no answer to this proposition that occasionally a party might escape punishment who would otherwise be convicted. This might occur under any possible rule adopted by human legislation. It would not be a safe rule for this or any other court to adopt that because a party may possibly escape punishment, this court will coin rules of "judicial necessity" to meet all possible contingencies where the Legislature has not provided rules. Nor is this met by the fact that the defendant may have once at some point confronted the witnesses against him who may subsequently die or flee the country. This rule may be made to work more harshly against a citizen, for a case may be readily imagined where the witness has not been examined fully, and the enemies of the accused secures the flight of the witness with a knowledge that upon rigid cross-examination before a jury, the testimony he may have previously given may be totally destroyed by such cross-examination. The main reason for confronting the accused with the witnesses, is that the jury who are to try the man for his life or his liberty may hear the witness testify, and to notice his expression when undergoing cross-examination as well as the whole demeanor of the witness. It is not unknown to the ordinary practitioner that witness' testimony may be plausible in its deliverance, and yet the manner of his intonation, the expression of his face, the confusion that may be exhibited when pushed or crowded with questions that go to determine his veracity, and in fact his whole general demeanor may carry conviction to the minds of the jury that the witness is committing perjury or evading the truth. The manner of the absent witness and his conduct and all of the little incidents that hang around a rigid cross-examination cannot be reproduced before a jury through the testimony of the reproducing witness. The expression and demeanor is sometimes the most powerful and successful attack upon the witness. This may or may not be policy, but it was clearly the intention of the framers of the Constitution that on his trial before a jury the accused should be confronted by the State's witnesses. I do not care further to elaborate this question. The Constitution and article 24, Code Criminal Procedure, supra, ought to be the rule controlling this court, and I find nowhere in the law or in the Constitution anything that justifies this court in entering the limitless field of necessity or by judicial construction creating rules that were plainly and clearly not intended by either the Constitution or the Legislature, and I say, in conclusion, that I do not believe the Legislature has any authority to make any rule or enact any legislation in contravention of the plain provisions of the Bill of Rights, and I am fully sustained in this statement by section 29 of the Bill of Rights itself, wherein it provides: "To guard against transgressions of the high powers herein delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the

following provisions, shall be void." Language could not be stronger, nor have less need of construction than this quoted section.

I concur in the other questions decided as grounds of reversal, and believe this is a stronger ground than the others for reversal.