## W. E. STALLING v. THE STATE.

No. 6366.   Decided November 23, 1921.

### 1.—Motor Vehicle—Highway—Driver Rendering Necessary Aid—Validity of Statute.

Article 820-m, supplement to Vernon's Penal Code, is valid with certain interpretations and limitations. Following Scott v. State, 90 Texas Crim. Rep., 100.

### 2.—Same—Charge of Court—Knowledge of Collision—Statutes Construed.

Where, upon trial of a violation of Article 820-m, supplement to Vernon's Penal Code, requiring that when an automobile strikes a person the driver shall stop and render necessary aid, the defendant contended that there was error in the court's charge in failing to submit to the jury, under the facts in the instant case, the defendant's knowledge of collision, and the trial court took the view that under the statute, under which this prosecution was had knowledge or intent on the part of the defendant was not a part of the offense; held, that such charge in the instant case, under the facts, was reversible error.

### 3.—Same—Statutes Construed—Want of Knowledge of Collision.

The verbiage of the statute, Article 820-m, supra, is such as to necessarily imply that want of knowledge of the collision would excuse a compliance with the statute. Following Scott v. State, 90 Texas Crim. Rep., 100, recently decided.

**4.—Same—Knowingly—Charge of Court—Statutes Construed.**

It is true that the word "knowingly" is not included in the Act of the Legislature, and doubtless, for the court to instruct upon that subject in every case would be unnecessary; but in a case, like the present one, when the evidence leaves the question of defendant's knowledge of the accident in a condition that the solution is a, question for the jury, it is incumbent upon the court. in response to proper exception, to instruct the jury that the want of knowledge of the accident would excuse the failure to stop and render aid. Following Vaughn v. State, 86 Texas Crim. Rep., 258, and other cases.

**5.—Same—Argument of Counsel—Inflammatory Remarks—Reversible Error.**

Where, upon trial of violating the statute requiring that when an automobile strikes a person the driver shall stop and render necessary aid, counsel for the State, in his argument to the jury, said. "This defendant is guilty of one of the most damnable murders ever committed in Dallas County. His act in murdering Mrs. ·Bird Patterson by running over her with an automobile shows him to be a man regardless of social duty," to which counsel for defendant promptly objected, and requested a charge withdrawing it, of which the court took no notice, the same was reversible error; although there was no written request to charge the jury to disregard said argument. Following Flores v. State, 82 Texas Crim. Rep., 107 and other cases.

**6.—Same—Argument of Counsel—Case Stated—Reversible Error.**

Where, upon trial of neglect or failure to render necessary aid after striking a person with an automobile, etc., counsel for the State remarked that defendant was guilty of a damnable murder. etc., its obvious tendency was to divert the minds of the jury from the real issue, and to bring them to the belief that it was within their province and duty to punish the defendant for the death of the deceased, the same was improper and reversible error. Following Gusters v. State, 87 Texas Crim. Rep., 181, and other cases.

Appeal from the Criminal District Court of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of a violation of the statute which requires the driver of an automobile, when he strikes a person on the highway to render necessary aid, etc., penalty; five years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Nelms,* for appellant.—Cited cases in opinion.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Appellant is sentenced to confinement in the penitentiary for a period of five years for violating the· statute requiring that when an automobile strikes a person the driver shall stop and render the necessary aid. See Art. 820m, Supplement to Vernon's Penal Code. The validity of the statute, with certain interpretations and limitations, has been sanctioned by this court in the case of Scott v. State, No. 5965, 90 Texas Crim. Rep., 100.

In the instant case, Mrs. Patterson, while walking in company with her husband upon one of the streets of Dallas, Texas, at night-time, was struck by an automobile and killed. The driver of the car failed to stop, and the appellant was charged with the offense. Circumstances were relied upon by the state to identify him. He denied his identity and introduced evidence tending to prove an alibi. The jury settled the conflicting theories against the appellant and determined that he was the driver of the car and that he failed to stop and render aid after the car struck the deceased.

In addition to an attack upon the validity of the law upon which the prosecution is founded, several complaints are directed against the rulings of the trial judge on questions of practice. In one of his criticisms of the charge of the court, the appellant contends that there was error in failing to submit to the jury appellant's knowledge of the collision. The learned trial judge, in commenting upon the bill of exceptions, states that "the statute under which this prosecution was had does not make knowledge or intent a part of the offense, and the evidence does not raise the issue of either." It is true that the appellant relies upon evidence of alibi. This, however, did not deprive him of the right to have submitted to the jury any other defensive theory sanctioned by law which arose from the evidence. The night was dark and cloudy. He admitted, in his testimony, that on the same evening he was driving an automobile which the circumstances, as determined by the jury, identified as the one which caused the injury. It was undisputed that the car which struck Mrs. Patterson did not stop after striking her. It was claimed by some of the state's witnesses that it was going at a high rate of speed, about thirty-five miles per hour, and after the accident continued its course. There is evidence from state's witnesses that:

"The automobile just flashed out on to those car tracks and made a bounce which made a noise and I heard a woman scream and heard a crash like two cars run together. . . . I didn't see the car hit anybody, just heard the scream, and I really thought it was somebody that was in the car; the car was going so fast it swerved over toward the left."

Another witness said that just after the car struck Mrs. Patterson it swerved a little to the right, hesitated, and then left; that the car did not stop; that no one got out to render any assistance.

Another said:

"I ran out of the house and saw two people lying in the street; it was a man and a woman. There was an automobile slowing up in Tenth Street, right in front, or a little past. I saw this car slow up,

and then it started again. I saw the automobile slow up and the driver lean out and look behind him, and then he pulled out again."

It is the theory of the state that the appellant was the driver of the car. It was his contention that he was not the driver. The conviction is based upon the idea that the state's theory was correct, and it is upon this theory that the question as to whether there was an issue of knowledge must be determined. Doubtless, the jury might have concluded that the driver of the car became aware of the accident, but we do not deem it conclusive to a degree that would take the question of knowledge of the accident away from the jury and render it competent for the court to decide it as a matter of law.

The verbiage of the statute is such as to necessarily imply that want of knowledge of the collision would excuse a compliance with the statute. It demands that the driver or person in control shall stop the car and render the necessary aid. The interpretation of the statute in the case of Scott v. State, *supra,* is in àccord with the view that the absence of knowledge would be a defense. From that decision we quote:

"No new provision has been read into the law. We only construe what 'all necessary aid' means in the statute; and say it must be determined from an accused's standpoint as to how much and what character of aid appeared to be necessary under any given state of facts. Surely the driver of an automobile should have no trouble in understanding in advance that in case of an accident he was expected and required to do what appeared to him to be necessary to alleviate suffering."

It is true that the word "knowingly" is not included in the Act of the Legislature. It would not be necessary, doubtless, for the court to instruct upon that subject in every case, but in a case like the present one, when the evidence leaves the question of appellant's knowledge of the accident in a condition that its solution is a question for the jury, we think it incumbent upon the court, in response to a proper exception, to instruct the jury that the want of knowledge of the accident would excuse the failure to stop and render aid. Vaughn v. State, 86 Texas Crim. Rep., 258; Wharton's Crim. Law, vol. 1, sec. 112; Watson v. State, 13 Texas Crim. App., 76; Alonzo v. State, 15 Texas Crim. App., 378; Hildreeth v. State, 19 Texas Crim. App., 195; Simpson v. State, 58 Texas Crim. Rep., 254; Reed v. State, 53 Texas Crim. Rep., 4; Covington v. State, 51 Texas Crim. Rep., 48; Patrick v. State, 45 Texas Crim. Rep., 588; Wharton's Crim. Law, sec. 108.

State's counsel is quoted in his argument to the jury as saying:

"This defendant is guilty of one of the most damnable murders, ever committed in Dallas County. His act in murdering Mrs. Byrd Patterson by running over her with an automobile shows him to be a man regardless of social duty."

And pointing his finger at the defendant, said:

"There sits the man who committed this murder. I know he is the identical man who did it."

Counsel for appellant promptly interposed objection to this argument and verbally requested the court to instruct the jury to disregard it. The court apparently took no notice of this objection and permitted the argument to proceed without interruption. Whether the language used by counsel in a given case is obviously of a nature to impair the rights of the accused or to improperly prejudice his case before the jury is manifestly a matter that must be determined upon the merits of each particular case. The language used, the issues involved, the attitude of the parties, and the result of the trial are all things which enter into the decision of the question. When the argument is of such a nature, it frequently happens that a reversal must follow from it, although, as in this case, there was no written request to charge the jury to disregard it. Smith v. State, 44 Texas Crim. Rep., 142; Smith v. State, 55 Texas Crim. Rep., 569; Flores v. State, 82 Texas Crim. Rep., 107, and cases cited therein.

In the instant case, the prosecution was not for the killing of Mrs. Patterson, but it was for the neglect or failure to do that which the dictates of humanity would have demanded and which the statute required to alleviate the suffering of the injured woman. The statute did not contemplate punishment for the injury or for the death. These are matters which might have been involved had the prosecution been for murder or for negligent homicide. The purpose of the statute and its scope were well within the knowledge of counsel and of the court. The jury, however, was likely to lose sight of these matters and fasten their minds upon the fact that, from the act of the accused the death of the deceased resulted, and assume that it was their duty to punish for the death and not for the failure to comply with the terms of the statute upon which the prosecution was founded. The language selected and used by counsel was calculated to emphasize this inclination of the jury. In fact, its obvious tendency was to divert the minds of the jury from the real issue and to bring them to the belief that it was within their province and duty to punish the appellant for the death of the deceased. We cannot bring ourselves to believe that the language was other than inflammatory and obviously hurtful and calculated to impair the rights of the appellant and prejudice his cause. The failure of the judge to take notice of it and to disavow its propriety may have impressed the jury with the idea that he approved it; that by his silence in the face of the protest against it, he indicated his sanction. The extreme penalty allowed by law was assessed. To what extent it was induced by the remarks in question, it is not possible to determine. It is certain, however, in our opinion, that the remarks tended to press upon the jury the idea that they were trying the case for killing the deceased and bring from them the highest penalty with-

in their power. This court, by admonition and by reversals upon many occasions, has done its utmost to repress the practice of intemperate and improper arguments. So much has been said and so often that repetition seems futile. Illustrations are found in the following cases: Custer v. State, 87 Texas Crim. Rep., 181; Carter v. State, 87 Texas Crim. Rep., 299; Bookreson v. State, 88 Texas Crim. Rep., 150; Beach v. State, 85 Texas Crim. Rep., 64; Thurman v. State, 85 Texas Crim. Rep., 276; Flores v. State, 82 Texas Crim. Rep., 107; Wilson v. State, 81 Texas Crim. Rep., 216; Lagow v. State, 81 Texas Crim. Rep., 460; Weige v. State, 81 Texas Crim. Rep., 476; Murmutt v. State, 67 S. W. Rep., 510; Robbins v. State, 47 Texas Crim. Rep., 315; Jenkins v. State, 49 Texas Crim. Rep., 461; Taylor v. State, 50 Texas Crim. Rep., 560; Davis v. State, 54 Texas Crim. Rep., 250; Smith v. State, 55 Texas Crim. Rep., 569; Grimes v. State, 64 Texas Rep., 64.

For the reasons stated the judgment is reversed and the cause remanded.

*Reversed and remanded.*