SANDERSON v. STATE. (No. 10756.)

Court of Criminal Appeals of Texas. Feb. 29, 1928.

1. Criminal law 517(5)—Excluding accused's statements to constable after witness returned about 30 minutes after accused stated he killed father held error, where state introduced first statement (Code Cr. Proc. 1925, art. 728).

Where accused, immediately after killing, started towards town and on meeting constable stated that he had killed his father and was taken into custody, and about 30 minutes later accused made further statement explaining killing, exclusion, in murder prosecution, of accused's later statements explaining previous statement held error, under Code Cr. Proc. 1925, art. 728, where constable testified as to accused's first statement.

2. Criminal law 364(6)—Accused's statements explaining killing, about 30 minutes after being taken into custody immediately after killing, held admissible as res gestæ.

Where accused, immediately after killing, started towards town and on meeting constable stated that he had killed father and was taken into custody, and about 30 minutes later accused made further statement explaining killing, accused's statement explaining circumstances of killing held admissible as res gestæ.

3. Criminal law 369(2)—Proof of extraneous offenses going to prove main issue forms exception to rule inhibiting evidence of acts which have not eventuated in indictment.

Proof of extraneous offenses which go to prove one of main issues on trial forms an exception to rule inhibiting evidence of acts which have not eventuated in an indictment for felony or misdemeanor involving moral turpitude.

4. Criminal law 369(3)—In murder prosecution, admitting evidence relating to cash being short in meat market where accused worked held error.

In prosecution of accused for murder of his father, admitting evidence regarding cash being short in meat market in which accused worked for father and that accused bought watch for lady friend, which evidence had no relation to killing, held error.

5. Criminal law 723(3)—State's attorneys' remarks in prosecution of son for killing father regarding number of such killings and jury's duty held prejudicial error.

In prosecution of son for murder of father, statements of attorneys for state in arguing case to jury regarding number of such murders in county and regarding failure of duty by former juries and regarding jury's duty to convict in such cases, where accused was convicted of murder under evidence which raised issue of manslaughter, held prejudicial error.

Commissioners' Decision.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

D. F. Sanderson, Jr., was convicted of murder, and he appeals. Reversed and remanded.

Critz & Woodward, of Coleman, for appellant.

Sam D. Stinson, State's Atty., and Robt. M. Lyles, Asst. State's Atty., both of Austin, for the State.

MARTIN, J. Appellant killed his father. He is the eldest of three children and was 18 years old at the time of the tragedy. He claims to have killed in defense of himself and his mother. The mother of appellant had on the day of the tragedy filed suit for divorce against deceased. The evidence indicates that prior to this time she had had a very unhappy married life, due to the drunken habits of the deceased. He had, according to her testimony, manufactured intoxicants in the home and when under their influence had made many brutal assaults upon her. On the day of the homicide, returning to the home after citation in the divorce suit had been served upon him, he again assaulted his wife and appellant's mother, bruising her, and cutting a gash over her eye, and bloodying her face. Appellant had many times intervened to protect his mother, and on this occasion his little brother came for him, and he returned from his work to her home, observing at that time the effects of the brutal assault which had just been made upon her by his father. In a little while the deceased returned to the house, and again began drinking, and, according to the testimony of the family, threatened to kill both appellant and his mother, and was about to assault them with a bottle when appellant shot and killed deceased. Officers and witnesses, arriving immediately after the homicide, observed the bruised and bloody face of appellant's mother and found near the body of deceased in a nearby sink a bottle of beer, partly empty. There was taken from the house by the sheriff of the county at this time 155 full bottles of beer. After the killing appellant immediately started towards town and, meeting Berry Bishop, the constable, stated to him, "I have killed Dad." He was taken into cus-

tody and to the courthouse, a short distance away, where he continued in a highly nervous and excited condition; was crying and shaking, as one witness described, "like a dog that had been poisoned." This witness further said he was then not in condition to talk. He was in such a condition that the constable went for a physician and upon his return 30 or 40 minutes later the appellant made a further statement to the witness Bishop, which was excluded by the court and is made the subject of appellant's bill of exception No. 1.

[1, 2] The witness, Bishop, had been placed upon the stand by the state and the statement of appellant proved against him, above quoted. On cross-examination, the appellant offered to prove that upon the return of state's witness, Bishop, to the courthouse the appellant stated to him:

"My little brother, Jack, came to the garage just a little while before I killed Dad and told me Dad was killing Mother. I went home as fast as I could, and Dad had left. I saw my mother's face bleeding. I saw a cut over her eye, and she told me Dad had knocked her down two or three times in the hall and had threatened to. kill her before night. Mother and I went over to my uncle's house, but they were not at home. When we came back to the house, Dad was drinking a bottle of beer and he was mad, and I saw from the look on his face that he was going to do something. He reached over into the kitchen sink and picked up something, I think it was a beer bottle, and said, 'G— d— you, I will kill you both,' and I know he meant what he said, and I thought he was going to do something, and I thought he was going to kill me and my mother both, and I shot."

The facts and circumstances recited in the bill, we think, show that this was but a continuation of the former conversation had between witness, Bishop, and the appellant. It was at least explanatory thereof.

Article 728, C. C. P. 1925, reads as follows:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as, when a 'letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

This statute is an enlargement of the common-law rule which limited 'such proof to what was said at the time of making a confession or admission.

In the case of Pratt v. State, 53 Tex. Cr. R. 281, 109 S. W. 138, Justice Ramsey, speaking for the court, fully analyzes the authorities on this subject and in his usual clear and terse style announced the following rule :

"The true criterion and test for determining the admissibility of such statements is: Are they necessary to make any other act or declaration of a defendant, which has been proved by the prosecution fully understood, or do they explain same? Wood v. State, 28 Tex. App. 61 [12 S. W. 405]. We think this is the true criterion and the true test, and that measured by this test as applied to this case, the proposed testimony was admissible. The declarations and statements of appellant offered in evidence by the state went to the extent only that they would find Lide dead, and that he had shot him. In this testimony so introduced by the state there was an unequivocal admission that he had killed Lide, without explanation or undertaking to account for the circumstances under which the killing was done. In the conversation and statement sought to be proved, appellant undertook to give and did give the explanation, reasons, grounds and circumstances of the killing. This testimony was explanatory of the killing and contained appellant's justification for the homicide."

Measured by this rule and the above article of the statute, we think the proffered testimony admissible and its exclusion error. This evidence was also admissible, we think, as res gestæ.

[3, 4] Complaint is made of the cross-examination of appellant while testifying as a witness for himself, during which he was asked about the cash being short in a meat market in which he worked for his father, and in which appellant claimed that his uncle probably got the money. During this examination he was asked : "You never did look him [meaning his uncle] in the eye and say he got that money?" And further: "You never did arrest him for it?" And further: "And along about that time you bought a watch for a lady friend of yours and paid $75 for it?" To which he answered: "Yes, I did."

The time of this occurrence is not asked about by the state, and it does not appear from the evidence that it had any relation to the killing. If the facts on another trial are sufficient to show that this transaction in any way tended to prove malice or motive on the part of appellant for the killing, it would be admissible even though it involved proof of an extraneous crime for which no indictment had been returned. Branch's P. C. § 166. Proof of extraneous offenses which go to prove one of the main issues on the trial forms an exception to the well-known rule inhibiting evidence of acts which have not eventuated in an indictment for a felony or misdemeanor involving moral turpitude. There might be such juxtaposition and relation of the above facts to some of the main facts in issue as to make them admissible, but the matter, we think, shows error as presented in the bill.

[5] It is made to appear by proper bills of exception that attorneys for the state in arguing the case to the jury used the following language:

"Gentlemen of the jury, don't you think there have recently been too many murders of this kind committed in Coleman county, and don't

you believe there has been a failure of duty by former juries in this county?"

And further:

"Gentlemen of the jury, I want to say to you in all candor, and without trying to be funny, for this is indeed a serious matter, that it is my opinion that if these killings keep up and sons are permitted to kill their fathers in Coleman county, and if the juries do not convict, then the Legislature ought to pass a law making an open season for sons to kill their fathers."

The court verbally instructed the jury to disregard the first statement above quoted, but refused instructions to disregard the second. The bill further shows as a fact that there had been two former killings of fathers by their sons in Coleman county, and that each of the sons had been acquitted in public trials which excited a great deal of interest and which were known and discussed over the entire county. It is contended that the language was particularly harmful because it was a pointed reference to these former acquittals.

That these statements were highly prejudicial, were wholly unwarranted and calculated to injure the appellant is too plain for argument. The appellant was convicted of murder under evidence that overwhelmingly raised the issue of manslaughter. Extenuating circumstances were testified to by the appellant and his mother and corroborated by apparently disinterested witnesses, which were calculated to deeply stir any boy who possessed that natural love and tender solicitude that every son should feel for his mother. We have no way of knowing whether these arguments so aroused the prejudice of the jurors as to cause them to disregard the defensive evidence introduced, but that they may have had this effect is obvious from the verdict rendered. In many cases reversals have followed prejudicial arguments by prosecuting attorneys. See Freeman v. State, 103 Tex. Cr. R. 428, 280 S. W. 1069; Newton v. State, 101 Tex. Cr. R. 497, 275 S. W. 1055; Sharp v. State, 102 Tex. Cr. R. 305, 277 S. W. 1085; Hall v. State, 101 Tex. Cr. R. 396, 275 S. W. 1047; Haggard v. State (Tex. Cr. App.) 269 S. W. 438; Roberts v. State, 107 Tex. Cr. R. 139, 295 S. W. 609; McDuff v. State, 103 Tex. Cr. R. 668, 281 S. W. 1073; Fifter v. State, 100 Tex. Cr. R. 518, 272 S. W. 164; Stroehmer v. State, 100 Tex. Cr. R. 90, 272 S. W. 163; Jupe v. State, 86 Tex. Cr. R. 573, 217 S. W. 1041; Atkeison v. State, 100 Tex. Cr. R. 313, 273 S. W. 595; Rodriquez v. State, 100 Tex. Cr. R. 11, 271 S. W. 380; Stiles v. State, 91 Tex. Cr. R. 461, 239 S. W. 963; Hilson v. State, 96 Tex. Cr. R. 550, 258 S. W. 826; Ballard v. State, 97 Tex. Cr. R. 455, 262 S. W. 85; Stalling v. State, 90 Tex. Cr. R. 310, 234 S. W. 914, see page 916; Dowd v. State (Tex. Cr. App.) 284 S. W. 592; Cole

v. State, 104 Tex. Cr. R. 533, 286 S. W. 205; Walker v. State, 105 Tex. Cr. R. 252, 288 S. W. 220.

Other errors presented will not likely occur on another trial and are not discussed.

The judgment is reversed and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.