REBECCA BRADLEY ROGERS, ALIAS REBECCA BRADLEY v. THE STATE.

No. 11818.    Delivered January 23, 1929.

The opinion states the case.

*W. A. Wright* of San Angelo, *Ed H. Moss* of La Grange, *E. A. Arnim, Jr.,* of Flatonia, *Cofer & Cofer* of Austin, *Otis Rogers* of Fort Worth, *Simpson & Collins* and *Leo Brewster* of Fort Worth, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, fourteen years in the penitentiary.

A great multitude of bills of exception appear in the record. The transcript alone contains over three hundred pages. Nearly all of these bills are qualified to which no objections have been filed and we are bound under the law by such qualifications. Many of these qualifications directly contradict the recitals of fact contained in the bills. Others of them contain objections reciting certain facts, the truth of which is not certified to by the trial judge. The defendant should always incorporate so much of the evidence in the bill as verifies the truth of his objection: Smith v. State, 4 Tex. Crim. App. 630; Branch's P. C., Sec. 209. Nearly all the bills as well also as the statement of facts contain the details of unseemly wrangles between counsel for the State and appellant. It would be both tiresome and profitless to discuss these bills seriatim. The following illustrates the character of many of these bills: As an hypothesis for the opinion of medical expert testimony on the sanity of appellant, State's attorney incorporated the statement of certain facts which appellant's counsel claims were not proven, among which was that appellant was stuck up in a mud hole on her return journey from Buda to Austin. This bill is decorated with the following colloquy:

"Defendant's Attorney: There ain't any evidence of any sticking in the mud hole in this case.

"State's Attorney: There is evidence.

"Defendant's Attorney: Not a bit.

"State's Attorney: There is, and George Allen said, 'She told me that she went around the road and stuck up.'

"Defendant's Attorney: There is no evidence that she stuck in a mud hole.

"State's Attorney: No, I guess she was stuck up in candy."

After the insertion of this luminous (?) argument appears a qualification of the trial judge that the evidence shows that appellant did in fact stick up in a mud hole, thus foreclosing the matter against appellant so far as this Court is concerned. The Court's

qualification leaves nothing in the bill except the disputation of counsel.

Groping through a fog of verbosity which envelops and obscures this record, we find, however, several bills of exception relating to misconduct of the District Attorney and especially to improper arguments to the jury, some of which we think show error and a few of which we will discuss. Such matters must necessarily be viewed and measured in the light of the entire record and penalty assessed, in order to appraise their merits. As a background for these bills we give the following résumé of some of the evidence:

On December 11, 1926, the Farmers National Bank of Buda, located in a small town near Austin, was robbed by a lone woman and about a thousand dollars obtained. She was unmasked and apparently traversed for most of the distance the main highway from Buda to Austin. On the afternoon of the same day appellant was apprehended and a short time thereafter confessed and told the Sheriff where the money was and as a result of such confession most of the money was recovered. Prior to the robbery appellant was a resident of Austin, had been a University student and an employee as stenographer and secretary of several reputable men. Her reputation prior to the offense was shown to be good. There was no issue made about the robbery of the bank. Her defense was insanity and this was the only real issue to be decided by the jury. The testimony introduced at the trial tended strongly to support her plea that she was insane at the time of the commission of the offense. She produced former employers, associates, and mental experts, all apparently reputable people whose motives and whose integrity were not open to suspicion. Among these were State officials and University of Texas professors, including Dr. Ramsdell, whose opportunities of observation of appellant were unusual, and most of whom testified in minute detail to facts tending to show her insanity, and unqualifiedly expressed the opinion that she was insane. About the only testimony in rebuttal of this by the State was furnished by one physician.

Among the statements made by the District Attorney in his closing argument to the jury are the following:

"I felt like that if the defense in this trial was an honest-to-God insanity defense, it would be proper that those lawyers should have enough respect for the public that they would file a complaint in the probate court of the county where she lived, and if the jury were to find her insane, confine her within an asylum. Because, my friends,

tonight, if you acquit this woman, even though you say in your verdict that it is upon the ground of insanity, she will leave this court house free. She will go forth into society, and if she is an insane person, she is a menace to society. * * * Unless somewhere in some probate court, some County court of some county in Texas a trial is had before six jurors and a verdict of insanity is returned, up until that time she will never be confined. * * * If they believe that she is insane then they have had more than a whole year since she committed this crime within which to have her confined within an institution. * * * Listen, you turn this woman loose tonight, and you would need to tell this sheriff to go down to the jail and open the jail doors and let every prisoner out down there, because if she has got dementia praecox, they have got it too. * * * And I want to tell you that if this woman has got it, then the man that I am going to try tomorrow, the negro that I am going to try next day, has got it too. * * * The people are entitled to some protection. They have had an opportunity, Mr. Witt; they have had a chance to confine her in the asylum, and they won't do so. * * * If you believe that this woman is guilty, you ought to convict her. If it is that character of case that calls for executive clemency, then let the Board of Pardons at Austin do its duty, let it be said that you did yours. And then its up to them to do what they think is their duty. Don't run from your duty; trust those in charge of our government up yonder to do theirs."

It is contended by appellant, and we think correctly so, that this was a direct appeal to the jury to disregard the charge of the Court authorizing her acquittal even if she were insane at the time of the commission of the offense. It amounted in effect to an appeal to convict if she robbed the bank even though she was insane at the time, because her counsel had not instituted insanity proceedings in probate court. Moreover, under the peculiar facts of this case the inference from such argument seems intended that she could and would be pardoned if insane so the jury need not consider her insanity plea.

Insanity is recognized in all civilized countries as a disease, and not a crime. The appellant has, and ought to have, the privilege of being treated in a private institution without incarceration in an insane asylum. This right is given her even if convicted in County Court, for by the terms of Art. 5558, R. S. (1925), she may upon conviction in County Court relieve herself of incarceration by giving the bond therein required. The right to an acquittal upon the ground

of insanity is one given and guaranteed by direct legislative enactment and it cannot be taken from her or abridged by the failure of her counsel to institute proceedings in County Court for her confinement in a lunatic asylum. No such duty devolved upon them or her. To say that a jury may disregard a plea of insanity upon such ground is .to nullify the statute. Humane instincts and modern wisdom have found expression in Art. 34 of the Penal Code, which provides without qualification that "no act done in a state of insanity can be punished as an offense," as opposed to the ancient and savage law that put all insane persons to death. The duty is ours to preserve the legal rights of an accused, and to approve such arguments and convictions influenced thereby would amount in effect to the judicial amendment by us of Art. 34, P. C., by adding a provision that no plea of insanity was available unless counsel for accused first instituted lunacy proceeding in County Court, nor in any case where the jury believed a pardon would be granted. Similar arguments have been many times condemned by this Court. Particularly so in the case of Weige v. State, 196 S. W. 525, where Presiding Judge Morrow, writing for the Court, held strikingly similar language reversible error. Again Judge Ramsey in Smith v. State, 55 Tex. Crim. Rep. 569, condemns similar language and held same error even where the Court gave a charge withdrawing same. See also Maynard v. State, 293 S. W. 1104. In this case the Court instructed the jury to not consider a part of the above language, but we regard the argument as of that insidious and prejudicial character that could not be cured by such an instruction. . We mention finally the highly improper statement that the District Attorney was about to try a negro that had the same disease, and that the Sheriff had as well go down and let every prisoner out of jail if appellant were turned loose. This is so obviously improper that its mere statement is deemed sufficient. In the light of facts shown in the record and the penalty assessed, we regard the use of the above language as demanding of us a reversal of this case and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.