J. W. Meyers v. The State.

No. 12726.   Delivered June 26, 1929.

The opinion states the case.

*Bert G. Ashby* and *Boskett & Dr. Lee* of Dallas for appellant.

*Wm. McCrow,* District Attorney, *Andrew J. Priest,* Assistant District Attorney of Dallas County, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, ninety-nine years in the penitentiary.

The State's evidence shows that about Christmas eve, 1928, appellant robbed N. H. Howard, manager of Grant's Store in the City of Dallas, of the sum of $2470.00 in money at the point of a six shooter. He was captured before leaving the store.

Appellant admitted the robbery and offered insanity as his only defense. His testimony tends to show that shortly after his graduation from high school he began working in a restaurant and about that time received a suspended sentence in Oklahoma for the theft of an automobile. During the intervening seven or eight years previous to the robbery, he had worked at various points. Coming to Dallas, he had been employed there by business concerns as salesman, working awhile for the Federal Electric Company and later for Brown and Bigelow, whose employee he was at the time of the robbery. Testimony introduced by him further shows that he became infatuated with a young lady, whom he was to shortly marry, and his associates testified to acts occurring after this time showing his insanity and some of them to the opinion that he was insane. He introduced witnesses to show his good character. None testified otherwise.

Complaint is made of the reception in evidence of the testimony of various witnesses for the State to the effect that in their opinion appellant was sane. The substance of the objections to all this evidence was that no facts were detailed by these witnesses and no predicate laid as a basis for the expression of such an opinion. A discussion of one of these will suffice for all.

By Bill of Exception No. 5 it is made to appear that a city detective of the City of Dallas, who was connected with the identification bureau and who had occasion to observe appellant and listen to him talk at the City Hall about an hour and who had visited him in the jail several times, and who detailed part of the conversations he had had with the appellant, expressed the opinion that the appellant was at the time sane. Of the rule under discussion it has been stated:

"No rule can be laid down as regards the amount of knowledge which the non-expert witness must possess. The weight the opinion

shall have is for the jury alone. * * * The question whether a witness who is a non-expert is competent to testify is for the Court to determine. He must have had some acquaintance with the accused prior to the crime and he must have had some opportunity to observe his conduct upon which is based his opinion whether it was rational or irrational. Underhill's Criminal Evidence (3rd Ed.), Paragraph 264. See also Kellum v. State, 91 Tex. Crim. Rep. 272; Thomas v. State, 98 Tex. Crim. Rep. 428."

There is necessarily a difference between the evidentiary basis for an opinion as to insanity and sanity. The former is an abnormal condition of the mind and the facts evidencing it stand out in bold relief and can usually be stated with ease. Sanity is a normal condition of the human mind, which from its very nature does not specially attract attention and is more difficult to cast into descriptive language. While the predicate recited in the bill for the admission of the opinion as to appellant's sanity is rather meager, we are of the opinion that it was sufficient and the objection went to its weight rather than its admissibility.

The Court in his general charge instructed the jury in substance that the conviction of the appellant for the offense in Oklahoma mentioned above could not be considered as any evidence of his guilt in the instant case and was admitted only for the purpose of aiding the jury, if it did, in passing upon the credibility of the appellant as a witness for himself.

In his opening argument to the jury, the Assistant Criminal District Attorney is shown to have used the following language:

"When he (defendant) was twenty-one years old, when he was a man in the eyes of the law, we find him where? We find him facing the District Judge in Tulsa, Oklahoma, for having done what? For having stolen—hadn't quite reached the point where he would use a six-shooter, but he had stolen an automobile. And then, by virtue, I imagine, of a sympathetic plea, much like the one he has used in this case, a judge with a kind heart, after a jury passed upon it, permitted him to have a five-year suspended sentence. He has had his chance, my friends; theft of an automobile; highway robbery! What next? Murder! Is that what you want him to do before you give him the death penalty or ninety-nine years?"

The appellant at the time this argument was made requested the Court to withdraw same from the jury, which was overruled, and this action of the Court was made the subject of Bill of Exception No. 8.

It has been uniformly held throughout the history of our juris-

prudence that proof of extraneous crimes in no way related to the offense for which the accused is on trial is inadmissible with certain exceptions as original evidence of guilt. Of such testimony Mr. Underhill has aptly said:

"The large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences, and conclusions without adequate foundation. From such persons jurors are selected. They will very naturally believe that a person is guilty of the crime with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally heinous character. * * * To guard against this evil, and at the same time to avoid the delay which would be incident to an indefinite multiplication of issues, the general rule (to which, however, some very important exceptions may be noted) forbids the introduction of evidence which will show, or tend to show, that the accused has committed any crime wholly independent of that offense for which he is on trial." Underhill's Criminal Evidence (3rd Ed.), Paragraph 150.

The evidence of appellant's former conviction was not admissible as evidence of his guilt in this case and could not be so used by the jury. This is made so by an inflexible rule of law and the jury were so instructed in substance by the Court in his charge. It is correctly contended, we think, that the effect of the above statement was a subtle and strong appeal to convict appellant in this case because of the fact that he had been theretofore convicted of the crime of automobile theft and this in spite of the Court's charge, which told the jury that they could not so consider such evidence. It amounted in its practical effect to an appeal to disregard the Court's instruction. The same character of argument has been many times condemned by this Court. See McClure v. State, 100 Tex. Crim. Rep. 551; Jarrott v. State, 96 Tex. Crim. Rep. 239; Taylor v. State, 50 Tex. Crim Rep. 560. Presiding Judge Morrow in the case of McClure v. State, supra, quotes with approval the language of Judge Hawkins in Jarrott v. State, supra, as follows:

"Prosecuting officers in their zeal should not so frame their argument as to induce a jury to appropriate for general purposes testimony which can be properly introduced only for a limited purpose."

Continuing further, he states:

"This is deemed a rule that is conducive to a fair trial, which under the beneficent provisions of our law, is to be accorded to all whose life and liberty are in jeopardy, and the ends of justice are met by bringing before the jury those matters of evidence which are

sanctioned by law, and making of them such use as will lead to an orderly and just decision touching the guilt or innocence of the accused and the measure of his punishment of guilt."

See also recent case of Rogers v. State, 13 S. W. (2d) 116, and authorities there collated.

The same attorney also used language in part as follows, as reflected in Bill of Exception No. 9:

"Let me tell you, my friends, you have heard little groups of men talking about law enforcement. You run across them every day, of course. You hear one say, 'My God! See where we have had another hijacking.' * * * You hear them say 'Why is it something isn't done?' "

This was objected to, which objection was overruled. The oath of the jurors impanelled to try this case demanded of them that they try fairly and impartially the issue of appellant's guilt or innocence upon evidence heard by them from the witnesses. To imply, as was done in this argument, that public sentiment and public opinion demanded the conviction of the appellant was improper. Safeguards have been written into our constitution and statutes which are plainly intended to prevent the hand of popular clamor from writing a verdict in criminal cases. The jury may have been led to believe that they would forfeit the respect of their neighbors unless they convicted and that this fear may have influenced the jury is manifest.

In view of the issues of this case and the grave penalty assessed, we are not able to say that the combined effect of these arguments may have not in some degree contributed to the size of the verdict rendered. For further authorities on improper arguments, see case of Sanderson v. State, 3 S. W. (2nd) 453, where many authorities on the subject are collated.

It is impossible to lay down an exact rule in matters of this kind. Where the issue of guilt is close and the verdict a large one, the effect of improper arguments is more likely to be regarded as erroneous. Every such argument is appraised in the light of the entire record.

We regard the two arguments as fraught with the possibility of too much danger to permit this conviction to stand. The judgment is accordingly reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.