Rosa B. SINGLETON et al., Appellants,

v.

Josephine W. CARMICHAEL, Appellee.

No. 12921.

Court of Civil Appeals of Texas.

Houston.

April 18, 1957.

Rehearing Denied Sept. 12, 1957.

Carter, Stiernberg & Skaggs, Harlingen, and David C. Whitlow, Edna and Jack Skaggs, Harlingen, of counsel, for appellants.

S. G. Sample and Thomas R. Bell, Edna, for appellee.

BELL, Justice.

The opinion rendered in this case on April 18, 1957, is withdrawn and the following is substituted as the opinion of the Court.

Suit was filed in the County Court of Jackson County to set aside the judgment of that court which had admitted the will of J. W. Carmichael to probate. The basis of the suit was the alleged testamentary incapacity of the testator to execute the will of March 30, 1949. The judge of that court denied the relief sought and appeal was taken to the District Court. On original trial in the District Court, the trial judge, at the conclusion of contestants' evidence, withdrew the case from the jury and entered judgment refusing to set aside the judgment of the county court. The contestants appealed to this Court and the action of the District judge in withdrawing the case from the jury was held to be erroneous and the case was sent back to the District Court for retrial, 271 S.W.2d 324. On retrial, before a jury, that body found that testator, J. W. Carmichael, had capacity to execute the will and on the jury verdict the court entered judgment refusing to set aside the order admitting the will to probate.

This is an appeal from such judgment.

Appellants, on this appeal, complain of the action of the trial court in admitting in evidence the testimony of Tom Sayles, Claudius Branch, Frank Volkmer, C. R. Hicks, Carl Tatum, Wallace Cherry, and Hubert Heller, all of whom were non-expert witnesses for appellee. The witnesses had contact with the testator either in the years 1947, 1948, at a time in 1949 subsequent to the execution of the will, 1950, or 1951. Each witness was permitted to testify that in his opinion the testator was of sound mind at the time the witness had contact with testator. Tom Sayles, who had contact with testator both before and after the execution of the will, was also permitted to give his opinion that

testator was of sound mind at the time he executed the will.

The objection urged to the testimony of these witnesses was threefold:

1. None of the witnesses had sufficient contacts to qualify them to testify.

2. The contact the witnesses had was too remote from the date the will was executed.

3. None of the witnesses related the facts upon which they based their opinion, and, being non-expert witnesses, such is requisite to the expression of an opinion that testator was of sound mind.

Tom Sayles testified he had known testator practically all his (witness') life. He saw testator in 1947 and testator spoke to him about selling him some land, but he (witness) couldn't buy and testator told him if he decided to buy to come back. Sayles did go back in the spring of 1948. At this time the witness and testator discussed the purchase by witness of the land. They discussed the terms, the terms being stated by testator. Testator told Sayles to go to Judge Sample and get the papers fixed up. This was done and the contract of sale was executed June 1, 1948. Thereafter, in the first part of 1949, Sayles discussed with testator the matter of executing an oil and gas lease on the property. They both executed the lease and agreed that the bonus would be applied on the purchase price of the land. The lease actually bore the date of December 24, 1948, having apparently been prepared prior to discussion with Sayles concerning it. Sayles again saw testator in 1950 and testator recognized him. At this time the witness' father showed testator a picture of testator's illegitimate son and testator began to cry.

Claudius Branch was Tax Assessor-Collector of Jackson County. He had known testator many years prior to testator's death. He had talked with him many times on the streets around the City of Edna. He never saw or heard anything during these years to indicate anything was wrong with testator. He last saw testator April 22, 1948, when testator signed a tax rendition sheet on the R. B. Singleton property. The witness failed to take a rendition sheet for testator's property. For this omission he apologized and testator told him there was no change from the previous year and agreed for witness to put his property on the rendered rolls without his signature. He also saw testator one time in 1947 when testator came to make a rendition. They talked generally about witness' return from the war and testator told the witness he was glad witness "got back alive".

Frank Volkmer had known testator a "long time". He last saw testator in 1951 and at that time talked with him about assessing property for taxation. Testator recognized witness when he arrived at testator's home. They talked "quite a while about different things". The witness then asked about his signing the rendition sheet, which testator did. He also talked with testator in 1949 at Stafford's grocery store and had him sign a rendition sheet. They "talked quite a bit" on this occasion also.

C. R. Hicks testified he first became acquainted with testator about September 19, 1949, when he went to talk about getting an agreement authorizing witness' father to sublet the land for grazing purposes on which testator had given witness' father a farming lease. The testator recognized Judge Sample, who accompanied the witness. They talked about the agreement and it was satisfactory to testator. Testator was up and around the house and, though physically feeble, "felt pert". Testator seemed normal.

Carl Tatum was Constable in Jackson County. He had known testator for forty years or more. He was well acquainted with him. In July of 1950 the witness went to see testator about acquiring a pipeline right-of-way from him. The witness told him what he wanted and testator told him he was not able to see well or to

get around well and that witness should go see Judge Sample. After seeing Judge Sample, the witness went back to see testator two or three weeks later to get the contract signed. Testator talked just like he always had. Testator was just feeble.

Wallace Cherry was a County Commissioner of Fayette County who, in 1950, went to see testator about a right-of-way deed across some property appearing in testator's name on the property rolls in Fayette County. Judge Sample went with the witness to see testator. Also, Mr. Bell went with witness so he might serve as a notary in taking testator's acknowledgment. Testator told the witness that he did not claim the land and had not been paying taxes on it. The witness told him that the records showed he owned an interest. Testator did not agree to sign until after Judge Sample told him it was all right. Too, witness, at Judge Sample's suggestion, was required to have explicit field notes in the deed. Testator had no difficulty in carrying on a conversation. "He was just like any average normal person."

Hubert Heller was also a County Commissioner of Fayette County who went to see about another right-of-way deed in December, 1950. The testimony of this witness was substantially the same as that of witness Cherry.

The trial court correctly admitted the testimony of these witnesses. Each of them had opportunity to observe testator and had some business transaction with him. They observed nothing aside from normal behavior. They testified he was of sound mind. Where a non-expert witness has had sufficient contact with the testator and has had opportunity to observe, and has observed him, the witness may express an opinion that he is of *sound* mind without detailing the facts which are the basis of the opinion. Thornton v. McReynolds, Tex.Civ.App., 156 S.W. 1144, writ refused; Shields v. State, 104 Tex. Cr.R. 253, 283 S.W. 844; Meyers v. State,

113 Tex.Cr.R. 26, 19 S.W.2d 317; Upton v. State, Tex.Cr.App., 20 S.W.2d 794. The authorities seem to hold that a non-expert witness testifying that a person is of *unsound* mind must detail the facts upon which he bases such conclusion. This recital of facts is not required where the conclusion of the witness is that a person is of *sound* mind. The reason for the distinction is well stated in Meyers v. State, supra [113 Tex.Cr.R. 26, 19 S.W.2d 318], where the court said:

There is necessarily a difference between the evidentiary basis for an opinion as to insanity and sanity. The former is an abnormal condition of the mind, and the facts evidencing it stand out in bold relief, and can usually be stated with ease. Sanity is a normal condition of the human mind, which from its very nature does not specially attract attention and is more difficult to cast into descriptive language.

Each of the witnesses had opportunity for observation of testator; they did observe him, and he seemed normal to them on the occasion of their observation. They, with the exception of Tom Sayles, confined expression of their opinion to the date of their observation. Tom Sayles had known testator practically all his life. He specifically testified to business negotiations with testator in 1947, 1948, 1949, and 1950. He also gave his opinion that testator was sane on March 30, 1949. We feel the witness' observations and knowledge of testator were such as to permit this testimony also.

The matter of admissibility is largely within the discretion of the trial court and in the absence of abuse of discretion his action will not be disturbed. The fact that some of the witnesses may have had only one or two contacts with testator goes to the weight of their testimony and not to its admissibility. The trial court did not abuse his discretion in

admitting the testimony. Santos v. Morgan, Tex.Civ.App., 195 S.W.2d 927.

■ The objection that the dates of the observations by these witnesses of the testator were too remote is untenable. The theory of appellants was that from the year 1947 on testator's mind was deteriorating. To evidence such, they made specific attack upon the soundness of certain business transactions concluded by testator during the years intervening up to his death. It was therefore proper that appellee repel such theory by testimony of persons who, during such time, had dealings with testator which afforded them opportunity for observation which impressed them with the normalcy of his behavior. Too, as evidencing the condition of mind on the day the will was executed, it is proper to receive testimony concerning behavior at times both before and after such date, providing it be not too remote. No exact point has been fixed beyond which a date becomes as a matter of law too remote; each case must be determined in the light of all attendant facts and circumstances. We hold that in the light of all facts and circumstances of this case the testimony did not relate to instances too remote.

Appellants assign as error the action of the trial court in excluding that part of the testimony of Lula Sayles that Josephine Carmichael, appellee, had stated to her that testator's mind was "no good". This allegedly occurred at the time Tom Sayles was talking to testator about buying some of testator's land around April, 1948. The evidence was offered both as an admission against interest and in impeachment of Josephine Carmichael who as a witness had vouched for the testamentary capacity of the testator.

■ The evidence was inadmissible, as an admission against interest because it occurred before the execution of the will which created the interest in Josephine Carmichael. Bass v. Bass, Tex.Civ.App., 207 S.W.2d 103, ref. n. r. e.; Reynolds v. Porter, Tex.Civ.App., 54 S.W.2d 1086; Gay v. Jackman, Tex.Com.App., 252 S.W. 1042; Huff v. Huff, Tex.Civ.App., 52 S.W. 2d 1092.

■ When the testimony of Lula Sayles was offered it was objected to as being hearsay and appellants then stated it was offered as an admission against interest *and* for impeachment. The admission of the testimony as an admission against interest would have had the effect of admitting the testimony as substantive evidence on the issue of testamentary capacity. As we have stated above, the testimony was not admissible on such theory because not an admission against interest. The other theory or purpose advanced was that it was offered for impeachment. Impeachment evidence, when hearsay in nature, as it is here, is not admissible as substantive evidence of a fact to be proved. While if properly offered hearsay, in the nature of a prior inconsistent statement, is admissible for impeachment, there was here no proper offer. There was an offer of the testimony for two purposes. Where such an offer is made and the testimony is admissible for one purpose but not for the other, the ruling of the court excluding the testimony is not improper and will not be disturbed. Appellants should separate the purposes and offer the testimony for the legitimate purpose independently. The burden is on the offeror to do this. 88 C.J.S. Trial, § 82, note 26, p. 189. Hicks v. Lawson, 39 Ala. 90; Johnson v. Marshall, 34 Ala. 522; Wigmore on Evidence, Third Edition, Sec. 18.

Appellants assert that the trial court erred in admitting in evidence defendant's Exhibits 48, 49, 50 and 51. Exhibit 49 was an order of the County Court authorizing an oil and gas lease from J. W. Carmichael, Guardian of the Estate of R. B. Singleton, to Lon R. Drushel. Exhibit 50 was an order of said court approving a sale of one acre of land from J. W. Carmichael, Guardian, to W. L. Hicks. Exhibit 51 was an order of such court ap-

proving the lease contract by J. W. Carmichael, Guardian, to W. L. Hicks. Exhibit 48 was an order of the court authorizing the sale of some land by J. W. Carmichael, Guardian. Carmichael was guardian of his daughter's estate, she owning a ⅙th interest in various properties as the heir of her deceased mother. These orders all related to transactions handled by her father as her guardian. Appellants, as evidence of lack of testamentary capacity, made an attack upon the various transactions to which the orders relate. Objection was made to the orders that it did not appear that Carmichael was present when they were signed by the County Judge, nor that Carmichael knew anything about the condition of the order. Also, it was objected that such had no bearing on the issue of testamentary capacity and they represented but an opinion of the County Judge and counsel had no opportunity of cross-examination. Appellee's counsel stated the instruments were offered in connection with applications to the County Court already in evidence or to be placed in evidence for the purpose of showing the business in which Carmichael was engaged immediately prior to the execution of the will. They were not introduced for the purpose of establishing the facts recited. There had theretofore been introduced, without objection, Carmichael's application to make the oil and gas lease, his application to sell the land approved by the order evidenced by Exhibit 50 and his report of such sale.

These exhibits were admissible for the purpose offered. It is permissible to show that a testator, whose capacity is attacked, was at or near the date of executing the will active and engaged in carrying on business affairs. The jury may consider such evidence in passing upon his capacity.

The exhibits were not offered as evidence of the opinion of the County Judge as to the necessity for or fairness of the transactions approved. If appellants desired an instruction limiting the jury in its consideration of this testimony, they should have requested such an instruction and, not having done so, they cannot now complain. Where testimony is admissible for a limited purpose and, as here, is so offered, it is not error not to limit its effect by instruction unless such is requested by the person against whom the evidence is introduced.

In their Amended Motion for New Trial appellants set up jury misconduct in the following particulars:

1. The jurors discussed the effect of their answer to the only special issue in that it was discussed if they found testator was of unsound mind it would "knock out" the will, the discussion having taken place before the issue was answered.

2. The jurors discussed who they wanted to win the lawsuit and based the verdict on this wish and not the evidence.

3. The jurors discussed the manner in which the law would divide the property if the will were "knocked out", one juror stating testator's illegitimate children would share in the estate and speculated on whether the old woman (Josephine Carmichael) would get anything.

4. The juror Magee gave unsworn testimony in stating during the deliberations that he knew Judge Sample who drew the will, and that Judge Sample was a good man and would not have any part in preparing the will if Carmichael was of unsound mind.

5. The jurors discussed what effect a finding of lack of testamentary capacity would have on the rice lease given W. L. Hicks and the sale of one acre of land to Hicks, and discussed that such a finding would knock out the lease and sale.

6. The jurors discussed the relative financial positions of appellants and appellee, it being discussed that appellants had plenty of money and appellee should have at least enough to live on the balance of

her life. Also it was discussed that the will was fair.

This motion was not supported by the affidavit of any juror, but appellants' counsel makes an affidavit that an unsigned statement prepared for the signature of juror Johs, after one of appellants' counsel had obtained from Johs the information contained in the statement, was the statement of Johs, and after the statement was prepared and was read and corrected by Johs, he stated it was true but he would not sign it unless another juror also signed a statement.

On a hearing of the motion for new trial Johs did not testify. All jurors were present at the hearing but only juror Clingingsmith testified.

The trial court made no findings of fact, so any facts supported by the evidence will be presumed to have been found by the court in a manner so as to support his ruling on the motion for new trial.

The testimony of the juror was in substance that the jury discussed all the evidence thoroughly. The case went to the jury about 4:30 in the afternoon and the verdict was returned about 10:30 p. m. on the same day. The trial commenced March 7, and ended March 14. There was some discussion as to whether if the will was knocked out the illegitimate children would share in the estate. The witness contradicts himself and in one place says he stated they would not 'share, and in another place that they would share. After this a ballot was taken and ten voted to find testator of sound mind, and two to find him of unsound mind. The jurors then went to supper. After supper there was some discussion that if testator was of unsound mind it might knock out the lease to W. L. Hicks and the sale of one acre of land to him. The witness was the one who made this statement. A second ballot was taken and the vote was 11 to 1 to find testator of sound mind. A few minutes

later a third ballot was taken and the verdict was unanimous. The jurors had also discussed the will made a fair distribution of the property.

The burden was on appellants to establish that any misconduct probably resulted in injury to them. In the light of the whole record on the trial of the case, and on motion for new trial, we are of the view that appellants have not discharged this burden and that there was no error in the action of the trial court in overruling the motion for new trial. Rule 327, Texas Rules of Civil Procedure; Trousdale v. Texas & N. O. R. Co., 154 Tex. 231, 276 S.W.2d 242.

Appellants' motion for rehearing is refused, and the judgment of the trial court is affirmed.

Judgment rendered and original opinion filed April 18, 1957. Motion for rehearing refused, original opinion withdrawn, and opinion on rehearing filed September 12, 1957.