Mrs. Lois Lorraine GOTTSCHALD et al.,
Appellants,

v.

Mary, Belle REAVES, Independent Executrix, etc., Appellee.

No. 15647.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 23, 1970.

J. Leonard Gotsdiner, Ranseler O. Wyatt, Houston, for appellants.

Harold R. Allison, Houston, Freddie F. Lee, Pasadena, for appellee.

BELL, Chief Justice.

Appellee offered for probate the will of her deceased husband, Henry Frank Reaves, which was dated July 15, 1963. At the same time she offered for probate a codicil dated September 20, 1966. By the terms of the will appellee was made the sole devisee and was appointed independent executrix. Under the terms of the codicil the children of the testator by a previous marriage were left the sum of $1 each. The children, except for Ralph who had conveyed his interest in testator's estate to the other children, filed their contest of both the will and codicil, contestants asserting invalidity of both instruments on the grounds of want of testamentary capacity and undue influence on the part of appellee and praying that the estate be distributed according to the laws of descent and distribution. The will and codicil were admitted to probate in the Probate Court No. 1 of Harris County. The appellants appealed to the District Court.

In answer to issues submitted by the District Court the jury failed to find from a preponderance of the evidence that either the will or the codicil were procured by undue influence on the part of appellee. No issues were requested or submitted on testamentary capacity. Based on the jury verdict the court rendered judgment admitting the will and codicil to probate and ordered same certified to the Probate Court for observance.

■ There is, in our view, nowhere in the record evidence of probative force to show that the will of July 15, 1963, was procured as a result of undue influence or that testator lacked testamentary capacity.

The theory of appellants is that the testator, at some time between the making of the will and the date the codicil was executed, decided to leave his property to his children in equal shares, that he told appellee that this was what he wanted and wanted her to have a lawyer prepare the necessary will or codicil, and that appellee had the lawyer prepare the codicil so as to leave the children only $1 each. Further, it is appellants' contention that the codicil was not read to testator but he was led to believe that the codicil did leave his property in equal shares to his children.

Appellee made a prima facie case establishing the validity of the will and codicil and that neither had been revoked.

After appellee had made out her prima facie case, appellants proceeded to seek to establish their defenses. They first called appellee as a witness. The effect of her testimony is that she went with testator to his attorney's office in July, 1963, when he made his will. The will was left at the attorney's office though they had a signed copy at home. Sometime in the spring of 1966 in April, May or June, the testator said he wanted to add to his will. He asked her in September, 1966, when he was in Memorial Hospital, to have his attorney come to see him because he wanted to add to his will. He told her that he wanted to leave a dollar to each child. She did not recall whether she told Mr. Lee that her husband wanted to leave $1 to each child.

The record reflects that the testator was 71 years old when he executed the will and 75 when he died January 14, 1967. Appellee was 71 years old when she testified in 1969. She and the testator had been married about 25 years and had acquired some modest amount of real estate during their marriage.

Prior to trial appellants had taken the deposition of Mr. Ed Holt, a close friend of testator and appellee. On trial of the case Mr. Holt was not present and appellants introduced a part of his deposition.

The part introduced by appellants dealt largely with the friendship between the witness and testator that commenced in 1942. Too, it dealt with Mr. Holt's visits to testator while the latter was in the hospital. With regard to the will the witness testified that sometime in 1963 testator told him he had an appointment to see his attorney about making a will. Between April and August of 1966 the testator told him he didn't know whether to have his will made over, but he wanted some clauses added to it, but he didn't know the procedure until he talked to an attorney. This conversation occurred in April, 1966. Testimony as to what was said in the conversation is reflected by the following questions and answers:

"Question: What did he (testator) say to you at that time?

"Answer: Well, * * * he said 'I am going to have my will corrected or add to my will * * * I don't know what I am going to have to go through with, have another one made or prepared to it, but * * * I have some clauses I did want added to my will.'

"Question: * * * Is this the only conversation that Mr. Reaves had with you about changing his will?

"Answer: Well, he made the remark several times that he was going to have it—this will, he didn't know about what it would take or what, but he did want some clauses added to it, but didn't know whether he could add them on to the will or he would have to draw a new one up or another one up compared to it with these clauses added into it.

" * * * *

"Question: When he talked to you at Jesse's Cafe, did he ever say anything to you * * * that he wanted to change his will?

" * * * *

"Answer: He said he had some clauses he wanted added to it.

" * * * *

"Question: And did he ever mention anything about the fact, and when he had this conversation * * * that he wanted any of his children or his children to get his part?

[There was no answer to this question.]

"Question: But, he did say that he wanted to change the will?

"Answer: He wanted to add some clauses to it."

The witness was then asked, "Did you ever say anything or make any statement to the effect that sometime in April, or after Mr. Reaves was dismissed from the hospital * * * Mr. Reaves told you that he wanted to change his previous will and that he wanted to leave his part of the estate to be divided equally among his children?"

Objection was made that the witness had already testified to the contrary and this was an attempt to impeach their own witness. In connection with this objection, it is noted that appellants were reading from a deposition, in which deposition at a later point the witness had testified that he had previously given a statement to one of the appellants to the effect that Mr. Reaves told him that he wanted to leave his part to his children.

The theory of appellee is that appellants made the witness theirs by reading from his deposition and could not impeach him when they knew that he had elsewhere in the deposition testified that he wanted everything left to his wife.

The court sustained the objection.

The appellants then, as a bill of exception, read into evidence from the deposition

the testimony the witness gave relating to a statement he had previously given Mrs. Gottschald, one of the appellants. The effect of his testimony in this regard is that he gave her and her brother Leroy a written statement. He told her that testator told him that he had some clauses to add into it. He further stated that testator told him if he ever had anything he wanted it to be divided equally among his children, but he didn't have anything.

Also, he gave a statement to the attorney for appellants which in effect was the same as given Mrs. Gottschald. The deposition testimony relating to this statement is also set out in the bill of exception.

After the bill of exception was completed, the proponent offered the deposition testimony of the witness that testator had told him that he wanted it left to his wife; that it originally belonged to her and he wanted her to have it.

At this point it is difficult to determine whether appellants re-offered the testimony. Appellants' counsel stated, " * * * in view of the fact that counsel for the Proponent offered the testimony contained on page 73 of the deposition of Ed Holt, therefore, we would have the right to cross examine said witness to cover the same subject matter." The record does not reflect that the court ever ruled with regard to this statement of appellants' counsel. We will treat the statement as an offer and that the court refused it since the excluded testimony appears only in the bill of exception.

■ When the evidence was first offered it was properly excluded but on the wrong ground. At that point the witness had not testified to anything to the contrary so there would not be impeachment by a prior inconsistent statement. However, it was properly excluded because it was hearsay.

■ When the proponent later offered the part of the deposition above noticed, she

made him her witness as to the part offered. After this the excluded testimony became admissible for impeachment purposes but not as original evidence. The offer by appellants at this point was a general offer and was not limited to its use for impeachment purposes. In such a situation there is no error in excluding the testimony. Singleton et al. v. Carmichael, 305 S.W.2d 379 (Houston 1st CCA), ref., n. r. e.; McCormick and Ray, Texas Law of Evidence (2nd Ed.), Section 21.

Appellants next put on Mr. Lee, the attorney who had prepared the will and codicil. The proponent had previously proven by Mr. Lee the nonrevocation of the will and codicil. Appellants did not cross-examine the witness but were allowed by the court to reserve the right of cross-examination. When the witness was called, the court sustained the proponent's objection to the witness being asked on cross-examination about any new matter and all testimony relating to things other than bore on the issue of revocation.

A bill of exception reflects the testimony of Lee that was excluded. In substance, the testimony was that Mrs. Reaves called him and told him that Mr. Reaves, in September, 1966, was in the hospital, and wanted to prepare a codicil. Mr. Reaves, when the will was drawn, had suggested that the children be given $1 each so they would not bother Mrs. Reaves. He told testator this was unnecessary. Mr. Reaves had discussed this with him several other times. Mrs. Reaves called him about the codicil. She gave him the names of the children. The codicil gave the name of Mrs. Gottschald as "Lucy Lorraine Reaves Gottschald". (Her first name is elsewhere shown to be Lois). The codicil also named "Henry Frank Reaves, Jr.". (His name was Frank Junior Reaves). He read the codicil to Mr. Reaves. Testator said nothing about the incorrect names. Testator was sitting on the bed. He informed Mrs. Reaves when the codicil was prepared. She

**311**

had no opportunity to read the codicil. In the Probate Court he had testified that when Mrs. Reaves called him she told him Mr. Reaves wanted to make sure the children didn't bother her and she supposed Mr. Lee knew what to do. At the District Court trial he explained that he knew what to do because of his previous discussion and he then prepared the codicil. Present in the room when the codicil was executed were Mr. Lee, Mrs. Reaves and the witnesses, Mrs. Bowers and Mrs. Davis.

█ While it was error to restrict examination of the witness to the subject of revocation and not allow the testimony of Lee to go to the jury, we hold it was harmless. Rule 434, Texas Rules of Civil Procedure.

█ The evidence of undue influence is quite meager. There was a mistake in part, in two children's names that was uncorrected by testator. However, who was intended is fairly certain. However, it might be some evidence the codicil was not read to testator. The most that can be said of Mrs. Reaves' presence when the codicil was executed is there was opportunity for undue influence. This alone does not suffice. Too, her arrangement for the codicil is, under the testimony of this case, only a slight circumstance. To establish undue influence the evidence of undue influence must be of a reasonably satisfactory and convincing character. Rothermel v. Duncan, 369 S.W.2d 917 (Tex.S.Ct.).

█ Another reason for affirmance of the judgment is that on appeal the complaints relate only to the codicil. Even though the codicil be invalid, the will remains valid. See Womack et al. v. Woodson et al., 169 S.W.2d 786 (Beaumont Tex. Civ.App., CCA), writ ref.

Affirmed.