Lorena MOELING et al., Appellants,

v.

Claude W. RUSSELL, Appellee.

No. 629.

Court of Civil Appeals of Texas, Tyler.

July 6, 1972.

Rehearing Denied July 27, 1972.

Carter, Jones, Magee, Rudberg, Moss & Mayes, Ben Warder, Jr., Dallas, for appellants.

Lane, Savage, Counts & Winn, G. Ward Beaudry, Dallas, for appellee.

MOORE, Justice.

This is a suit contesting the will of Mayme Keith Cherry on the ground that the testatrix was of unsound mind. Contestants are Mrs. Barbara Moses Haviland, Mrs. Lorena Moses Moeling, and Roland Moses, the nieces and nephew of the testatrix. By her will, testatrix bequeathed each of the contestants the sum of $500.00. Contestee, Claude Russell, was named residuary legatee, and as a result she bequeathed him the bulk of her estate consisting of approximately $50,000.00. Trial was before the court without a jury. After a hearing the trial court rendered judgment finding that the testatrix was of sound mind on March 21, 1969, the date she executed the will, and ordered that the will be admitted to probate.

Contestants appeal contending by their first point that the trial court's finding that testatrix was of sound mind is so overwhelmingly against the weight and preponderance of the evidence as to be clearly wrong and unjust.

Testatrix was a resident of Dallas County, Texas. She died on December 18, 1969, as a result of a stroke at the age of 85. She had no children, was a widow, and lived alone. The record shows that contestee, Claude Russell, was not related to the testatrix. He had been a friend of the testatrix for several years. He was unmarried, retired and visited in testatrix's home frequently, assisting her with some odd jobs around the house. The record shows testatrix bought him an automobile and also gave him access to her lock box at her bank. He was described by some of the witnesses as being her boyfriend.

At the time she executed the will on March 21, 1969, testatrix's closest relatives were a sister, Ida Green, who lived in Lake Charles, Louisiana, and two nieces, Barbara Moses Haviland of Milwaukee, Wisconsin, and Lorena Moses Moeling of Lake Charles, Louisiana, and a nephew, Roland Moses, also of Lake Charles, Louisiana. While testatrix also bequeathed the sum of $500.00 to her sister, Ida Green, she is not a party contestant.

■ Some 16 witnesses testified at the trial giving testimony as to the mental capacity of the testatrix. Dr. E. R. Cox, testatrix's physician since 1944; her lawyer, Grady Lamar Holley; a subscribing witness; a bank employee; a librarian; a public stenographer; and a friend all testified that they were of the opinion that she was of sound mind. Contestants produced several witnesses consisting of distant relatives and neighbors of testatrix who testified in substance that she was eccentric, sick, senile, and was of unsound mind. Contestants also produced testimony of two doctors. One of the doctors had never seen testatrix prior to her death and the other saw her only after her stroke shortly before her death. In response to hypothetical questions, both doctors expressed their opinion that the testatrix was of unsound mind.

According to the testimony of Grady Lamar Holley, the attorney who drafted the will, testatrix originally came to his office in the company of contestee, Claude Russell. He testified that he was not ac-

quainted with either testatrix or Mr. Russell and that Mr. Russell waited in his reception room while he and testatrix were in his private office where she told him she desired to make a will. After questioning her about the extent of her estate, he testified that she told him that she desired to leave the sum of $500.00 to her sister and her nieces and nephew and to bequeath the remainder of her estate to Claude Russell. According to this testimony, testatrix told him that she had not seen her sister or contestants since 1965 while at a funeral and she feared that they had deserted her. Contestee offered other testimony to the effect that in the meantime she had written her sister and nieces requesting them to come to visit her but that none of them ever came. Mr. Holley testified that after he had obtained the information with reference to her will, he told testatrix that it would take about a week and that he would call her when he had the will ready. He testified that when he called her she came to his office alone and executed the will.

Because of contestants' point of error complaining of the factual insufficiency of the evidence, we have made a complete review of the entire record. After so doing, and upon comparing the types of testimony offered by both parties, and after having weighed all the evidence, both that against as well as that in favor of the judgment, in accordance with the rules laid down by In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (Sup.Ct., 1951), we have concluded that the record does not present a situation where we would be justified in concluding that the judgment is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. Price v. Johnston, 352 S.W.2d 864 (Tex.Civ.App., San Antonio, 1961, dism.); Douthitt v. Haynie, 398 S.W.2d 831 (Tex.Civ.App., Waco, 1966, ref., n. r. e.). Accordingly, contestants' first point is overruled.

By the second and third point contestants urge that the trial court erred in over-

ruling their objection to the admission of testatrix's will into evidence because at the time it was offered, contestee had not established by competent testimony that Mrs. Cherry was of sound mind in accordance to Secs. 84 and 88 of the Texas Probate Code, V.A.T.S. In this connection the record shows that prior to the time the will was offered, contestee, over the objection of contestants, offered the testimony of one of the subscribing witnesses, Lallie McGuire, to the effect that testatrix was of sound mind. Contestants argue that her testimony was not competent because the witness had seen testatrix only once for a period of five minutes and therefore her testimony was inadmissible since her nonexpert conclusion of mental competency was not based upon established facts. Consequently they argue that it was error to admit the will in evidence at that particular time. The point is without merit and is overruled.

█ The authorities hold that a nonexpert witness testifying that a person is of unsound mind must detail the facts upon which he bases such conclusion. This recital of facts is not required where the conclusion of the witness is that a person is of sound mind. Thornton v. McReynolds, 156 S.W. 1144 (Tex.Civ.App., Texarkana, 1913, writ. ref.); Singleton v. Carmichael, 305 S.W.2d 379 (Tex.Civ.App., Houston, 1957, ref., n. r. e.), citing Meyers v. State, 113 Tex.Cr.R. 26, 19 S.W.2d 317 (1929). For this reason we hold that testimony of the subscribing witness was competent and therefore the will was properly admitted into evidence.

Finally by the two remaining points contestants urge that the trial court erred in sustaining contestee's objection to certain letters written by testatrix and a brief, handwritten note signed by testatrix stating she was leaving her house to her dog and her two cousins.

█ Generally speaking, a writing, not in violation of the dead man's statute, Article 3716, Vernon's Ann.Civ.St., which is

indicative of decedent's mentality is admissible in determining testamentary capacity. Vance v. Upson, 66 Tex. 476, 1 S.W. 179 (1886); Jones v. Selman, 109 S.W.2d 1003 (Tex.Civ.App., Waco, 1937, writ. dism.).

While we believe these writings, or at least some of them, were admissible, we are not prepared to hold that the trial court committed reversible error in refusing to admit them into evidence. Under the provision of Rule 434, Texas Rules of Civil Procedure, we are not permitted to reverse and remand unless the error is such that it compels the conclusion that such error was calculated to cause and probably did cause the rendition of an improper judgment. In view of the great abundance of other evidence supporting the trial court's finding of testamentary capacity, we fail to see how it can be said that the refusal to consider these instruments could be calculated to cause and probably did cause the trial court to arrive at an improper judgment.

Finding no reversible error, the judgment of the trial court is affirmed.