AMERICAN FOUNDERS LIFE INSURANCE COMPANY, Appellant,

v.

Carl D. WEHLING, Appellee.

No. 12662.

Court of Civil Appeals of Texas, Austin.

Jan. 25, 1978.

Rehearing Denied March 1, 1978.

E. Hazen Woods, Jr., Alvis & Carssow, Austin, for appellant.

Joseph Latting, Robinson, Felts, Meyers, Starnes & Latting, Austin, for appellee.

PHILLIPS, Chief Justice.

Appellee went to work for appellant insurance company in 1955 and served continuously as an agent and manager of an agency until 1969 when he was fired. Appellee then brought this suit against appellant to recover sums of money that he claims he was entitled to for business that he produced before he was fired.

The trial court pursuant to trial before a jury granted judgment for appellee and appellant has duly perfected its appeal to this Court.

We affirm.

Appellant is before us on thirty-three points of error which can be grouped into several principal questions for our determination.

The first question is what was the contract between the parties? Appellant and appellee had entered into a series of contracts during the years of their association. A letter contract dated January 10, 1969 epitomizes the contractual relationship between the parties and forms the basis of this lawsuit. The preamble to the letter is as follows: "This letter is to summarize and clarify the various addenda, supplements and amendments to your agent's and manager's contracts. In the event of conflict of interpretations of said contracts, the interpretations as defined in this letter will prevail." The pertinent parts of this letter contract are paragraphs 1, 3, 7 and 8 and are as follows:

"1. . . . you [Wehling], as a charter agent with the Company, are to receive 5% lifetime service fees on

all production credited to your agent's account as long as you remain under contract with American Founders Life Insurance Company.

. . .

"3. . . . you are to receive credit for 2% service fee on the premium produced by former agents while serving as an agent within your agency. . . .

"7. . . . in the event you return to personal production and give up your position as manager of an agency, the Company will continue to pay to you on your personal production such commission and overrides consistent with your manager's and agent's contracts and the terms of this letter; however, the Company would not be obligated to pay you an expense allowance of any nature.

"8. So long as you meet the required volume of production referred to in your agent's contract and continue to meet the terms as defined in Section I, paragraph III, of the agent's contract, 'full time agent' status will be accorded you."

Pursuant to trial, the jury found that appellee could have and would have maintained the required volume of production of $50,000 per year referred to in paragraph 8 from June 23, 1969 until the present, but for appellant's refusal of his offer to do so. The jury found $52,250 to be the difference between what appellant has received and what he would have received if his contract had not been terminated by way of compensation for personal insurance production, overrides on such production and compensation for the production of agents in his agency between June 23, 1969 and the present, taking into consideration only business in force as of June 23, 1969; it found $21,000 as future compensation based on past personal insurance production which, in reasonable probability, he would receive in the future and it found $22,100 as future compensation for past insurance production

for agents in his agency which, in reasonable probability, he would receive in the future referred to as 2% manager's service fee.

The jury also found that appellee's agency had five full-time agents as of June 30, 1969; that the NQA persistency,[1] by lives, of appellee's agency was at least 85% as of June 30, 1969; and, further, it found that appellant had not acted in good faith when it refused to make payments to appellee based on a percentage of premiums collected on policies issued by appellee and agents in his agency on policies after the first ten years of each policy.

Following the termination of the contractual relationship, the Company made periodic payments to Wehling in accordance with the Company's interpretation and construction of the contract, paying approximately $35,000 to or on behalf of Wehling from that date until the time of trial, and the Company further acknowledged a continuing obligation to make payments, based upon that construction of the contractual agreements until June 23, 1979. Basically the Company paid: a five percent "renewal commission" of premiums received by the Company during that period of time on policies written by Wehling while an agent for the Company, within the first ten years of the life of each policy; and, a "manager's service fee" which was vested pursuant to the written agreement for a period of not to exceed the first ten years of the life of policies written by agents in Wehling's agency. In fact there is no dispute but that the $35,000 has been paid and Wehling himself projected an additional $8,750 would be paid under this method of calculation between the time of trial and June 23, 1979. With respect to these amounts, there is no controversy.

The Company denies that it owes any more than the amounts paid through the date of trial and such amounts as might become due under such calculations between the date of trial and June 23, 1979.

---

1. NQA persistency, roughly, means the premiums being collected.

We note that all of the amounts sought in this cause and all of the amounts awarded were for monies earned by appellee before he was fired. Some of the amounts awarded by the trial court are for compensation that was payable in the future; however, none of it was referable to business that was to be produced in the future. All was for business already produced by appellee for the Company.

■ Contrary to the terms of the agent's contract of April 1, 1965, appellant contends that the term "lifetime service fees" has no meaning within the insurance industry and introduced expert testimony to that effect; however, the plain wording of the contract in this respect is clear. Lifetime service fees, as we understand the term used in the contract, are percentage payments made after the end of the period for payment of renewal commissions. The jury, in effect, found from the evidence that "lifetime" refers to the duration of the policy and is not necessarily confined to the ten-year period urged by appellant. Moreover, even if appellant's contention were to cast some doubt upon the meaning of the phrase, such doubt is to be resolved against the party who prepared the document. *Board of Regents of the University of Texas v. S & G Construction Co.,* 529 S.W.2d 90 (Tex.Civ.App.1975, writ ref'd n. r. e.).

Paragraphs 1 and 3 of the contract set forth the basis on which appellee was to be paid if he were an agent and if he were serving as a manager. Paragraph 7 of the agreement makes it clear that should appellee cease being a manager and return to writing insurance himself, the Company would continue to pay him on his personal production such commissions and overrides consistent with his manager's and agent's contracts. However, the Company would not be obligated to furnish him any expense allowance.

Paragraph 8 makes it clear that so long as appellee met a required volume of production, he would be accorded the status of a full-time agent.

■ It is appellant's position that in spite of the fact that appellee could have maintained the required volume of production as set forth in paragraph 8 (and the testimony amply bears this out), the Company had the right to fire him without any reason. We cannot agree.

■ This brings us to the question of whether the trial court correctly held that proof by appellee of future performance was unnecessary under the agreement set out above in that appellant had breached its agreement with appellee, and furthermore, that appellant had prevented performance by appellee.

Appellant contends that there was no finding by the jury that appellee would have continued to meet the requirement of $50,000 annual insurance production from the time of the trial and into the future so as to bring him under the terms of paragraph 8 of the contract. This was the required amount of production set out in one of the contracts forming a part of the letter contract, *supra,* and referred to in paragraph 8.

It is quite apparent from the record before us that there has never been a serious question that appellee could have and would have produced the required $50,000 per year volume of insurance. The record is clear that he had produced more than twenty times that amount the previous year and even appellant's senior vice president and director of agencies readily admitted that appellee could have produced $50,000 of business annually without any trouble.

Appellant, through its own action, prevented appellee from complying with the terms of the contract thus permitting appellee to recover under the terms of the contract as if the acts in question had been performed. *Smith v. Lipscomb,* 13 Tex. 532 (1855); *Hearne ₄v. Garrett,* 49 Tex. 619 (1878); *Sanderson v. Sanderson,* 130 Tex. 264, 109 S.W.2d 744 (1937); *Sargent v. Highlite Broadcasting Co.,* 466 S.W.2d 866 (Tex.Civ.App.1971, no writ).

■ The next question for our consideration is whether the trial court correctly

entered judgment based on a letter to a bank setting out appellee's projected earnings with appellant Company prepared by appellant's vice president and director of agencies. This exhibit forms the basis of the award of damages, and appellant claims it was improperly admitted because it contained the following sentence: "These projections, of course, are contingent upon Mr. Wehling's remaining as an employee of our company and would be altered considerably if he left the employment of American Founders Life Insurance Company." Appellant does not contend that the figures contained in the exhibit are incorrect. Indeed, appellant's vice president testified that the figures contained therein were accurate. In view of our holding that future performance on the part of appellee under the contract would be presumed under the facts before us, the admission into evidence of the letter naturally followed.

Next, we come to the question of whether the trial court correctly awarded damages to appellee in the sum of $10,500 for a manager's progress allowance and the value of a trip appellee had won.

■ Appellant promised appellee a bonus of $10,000 if he met certain standards. Appellant's vice president testified that two letters were sent to appellee to "motivate him." Appellee, apparently, was entitled to the bonus of $10,000 if he had five full-time agents in his agency on June 30, and if he had met a certain minimum gross production from his agency. It is uncontested that the gross production minimum was met. The appellant Company, however, denied that he had five full-time agents in his agency, and produced testimony to this effect. Appellee, on the other hand, testified that he did have five full-time agents at this time. The jury found that appellee did have five full-time agents and we uphold this finding under the evidence. Nor are we impressed with appellant's contention that one of its employees, a Mr. Dodson, should have been allowed to testify that after appellee was fired, he, Mr. Dodson, went to San Antonio where one of appellee's agents told Dodson that he (the agent)

did not intend to be a full-time agent. Appellee had objected on the ground that the testimony was hearsay, and it was excluded.

■ Appellant contends that the testimony should have been admitted as a declaration against interest. We hold that the evidence was correctly excluded. In the first place, it was never demonstrated that such a statement, if made, would have been against the interest of the party making it. In the second place, appellant failed to show that the agent was unavailable to testify. It is essential to demonstrate that the witness is unavailable before the rule concerning declaration against interest becomes operative. *Liberty Mutual Insurance Co. v. Heard & Jones Drug Stores*, 446 S.W.2d 911 (Tex.Civ.App.1969, no writ). Also see 2 McCormick & Ray, *Texas Law of Evidence* § 1003 (2d ed. 1956).

We also uphold the jury's finding that appellee had fulfilled the third requirement for the bonus, i. e., that his agency had an 85% persistency rating. Appellee testified that he believed his agency did have 85% persistency and the jury so found. Appellant had testified that appellee had only an 84.6% persistency.

■ As to the question of the $500, which is the agreed value of the trip appellee had won, the trial court was correct in making this award to appellee in spite of appellant's contention that he was no longer employed by the Company at the time when the trip was to be made.

■ We also hold that the trial court correctly refused to set aside the jury's answer with respect to special issue number 5 in which it refused to find that appellant acted in good faith. In this regard appellant complains that the trial court erred in excluding from evidence a letter from a New York consulting firm which raised the question of the validity of certain test scores made by applicants for agent positions. Appellant attempted to introduce this letter over appellee's objection that it was hearsay. Appellant argues that it should have been admitted as relevant to

the issue of the state of mind of appellant in firing appellee.

Nowhere in appellant's bill of exceptions does appellant's vice president testify that the letter had anything whatsoever to do with his attitude toward appellee. The next problem with appellant's position is that the exhibit was offered without any limitation whatsoever. If appellant was offering the letter for the limited purpose that it now asserts, it should have done so at the trial, and the failure to make the limited offer then is fatal over appellee's objection of hearsay. *Gottschald v. Reaves,* 457 S.W.2d 307 (Tex.Civ.App.1970, no writ).

Finally, we come to the question of whether or not the trial court correctly awarded appellee the present value of amounts he had already earned with appellant Company, which amounts were to have been paid in the future.

■ The applicable rule here is that a party who is obligated by contract to make monthly payments of money to another and when that party absolutely repudiates the obligation without just excuse, the obligee is entitled to maintain his action in damages at once for the entire breach and is entitled in one suit to receive in damages the present value of all that he would have received if the contract had been performed and he is not compelled to resort to repeated suits to recover monthly payments. *Pollack v. Pollack,* 39 S.W.2d 853 (Tex.Com. App.1931); and on motion for rehearing, (Tex.Com.App.1932) 46 S.W.2d 292; *Universal Life and Accident Insurance Co. v. Sanders,* 129 Tex. 344, 102 S.W.2d 405 (Tex. 1937).

■ Appellant is clearly in breach of its obligations to pay periodic sums to appellee, and the jury refused to find that the Company acted in good faith in failing to make these payments. In our opinion, this finding is supported by the evidence.

The judgment of the trial court is in all things affirmed.

Affirmed.